710 A.2d 926

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

David Shammai SABGHIR.

**Misc. AG No. 24, Sept.Term, 1997.**

Court of Appeals of Maryland.

June 8, 1998.

Melvin Hirshman, Bar Counsel, and Raymond A. Hein, Asst. Bar Counsel, for the Attorney Grievance Com'n of Maryland.

Richard I. Chaifetz, Columbia, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and DALE R. CATHELL, Judge (Specially Assigned).

BELL, Chief Judge.

The issue that this attorney grievance matter presents is whether a respondent who has been sanctioned in disciplinary proceedings in one state may collaterally attack the factual findings made in those proceedings by way of his or her defense in reciprocal discipline proceedings instituted in this state. Our response is "no."

## I

The Attorney Grievance Commission of Maryland (the "Commission" or the "petitioner"), through Bar Counsel, filed a Petition for Disciplinary Action against David Shammai Sabghir, the respondent, alleging misconduct arising out of disciplinary proceedings in New York.[1] Specifically, according to the petition, the respondent was disbarred by the Appellate Division of the Supreme Court of the State of New York after he had been found, by a special referee, to have violated ten of the Disciplinary Rules of the Code of Professional Responsibility. The petitioner sought a determination by this Court that the respondent, by those acts and omissions, violated the following Disciplinary Rules of the Maryland Code of Professional Responsibility (former Maryland Rule 1230, Appendix F): DR 1–102(A)(4)(6);[2] DR 5–101(A);[3] DR 5–104(A);[4] DR

---

1. A member of the Maryland Bar since December 13, 1972, David Shammai Sabghir was admitted to the New York Bar on November 26, 1980. Since that date, and until his disbarment there, he practiced exclusively in the State of New York, his Maryland Bar membership having become inactive as a result of his failure to make the required payments into the Clients' Security Trust Fund.

2. DR 1–102 Misconduct.
   (A) A lawyer shall not:
   
   \* \* \* \*
   
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   
   \* \* \* \*
   
   (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

3. "DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
   (A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

4. "DR 5–104 Limiting Business Relations with a Client.
   (A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

9–102(A) and (B),[5] and Rules 1.7(b) [6] and 8.4(c) of the Maryland Rules of Professional Conduct. Maryland Rule 1230.[7]

We referred the matter to the Honorable Clayton Greene, Jr. of the Circuit Court for Anne Arundel County to make findings of fact and conclusions of law pursuant to Maryland Rule 16–711(a).[8] Following a hearing, at which testimony and

---

**5.** "DR 9–102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

**6.** "Rule 1.7, Conflict of Interest: General Rule
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation."

**7.** Pursuant to amendment occurring on June 5, 1996, effective January 1, 1997, they are now set forth in Appendix: Rules of Professional Conduct of the Maryland Rules. *See* Maryland Rule 16–812.

**8.** Maryland Rule 16–711(a) provides: "A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

exhibits were received, Judge Greene rejected the respondent's argument that he had proven by a preponderance of the evidence that he did not engage in the misconduct found by the Appellate Division of the Supreme Court of New York. The respondent's argument was premised on his testimony and that of a Rabbi testifying as an expert witness.

In his testimony, the respondent denied that there ever existed an attorney client relationship between him and Benchemoun and Moradi, the complainants, or that he derived any benefit from the investments that resulted in his disbarment and are the subject of these proceedings. More specifically, as it relates to the Benchemoun matter and will be more fully explained *infra*, the respondent disclaimed responsibility for the diversion of the funds from a joint account in their names. To substantiate that point, he offered the affidavit of Timothy Rafferty, in which Mr. Rafferty accepted full responsibility. The Rabbi's testimony related to a business arrangement called an "iska." He testified that such a transaction is inconsistent with an attorney client relationship. The testimony of both the respondent and the rabbi was offered, Judge Greene stated, "in an attempt to establish mitigating circumstances, rebut New York's findings, and explain why the Respondent should not be disciplined."

Judge Greene made findings of fact as follows:

"The Court finds that New York's final judgment is conclusive proof of Respondent's misconduct. Petitioner submitted the Supreme Court of New York's decision of June 19, 1995, Exhibit 2, and the Court finds this is clear and convincing evidence of a final judgment by a judicial tribunal. *See Attorney Grievance Commission v. Miller,* 310 Md. 163, 168, 528 A.2d 481, 484 (1987). Respondent's evidence amounts to less than a preponderance of evidence to establish mitigating circumstances, rebut New York's findings or explain why

---

In addition to the charges enumerated above, Judge Greene dismissed a charge of misrepresentation to the Immigration and Naturalization Service. The Commission does not except to the disposition of that charge.

Respondent should not be disciplined. Therefore, the Court accepts New York's final adjudication as conclusive proof of Respondent's misconduct and accepts the following facts as found by the Supreme Court of New York:

"1.  On or about May 16, 1985, Eric Benchemoun delivered $10,000.00 to the Respondent for the purpose of investing in Nutribevco, a company which was marketing a diet product. The Respondent, who had a financial relationship with Nutribevco and its principals, was seeking investors for the company.

"2.  On or about June 27, 1985, a stock certificate representing 28,000 shares of Nutribevco was issued. The certificate bore the endorsement of 'David Sabghir and Yehyda Ben Chem Houn (sic) JTWROS.' The certificate remained under the Respondent's dominion and control until about September 24, 1985, at which time it was delivered to the brokerage house of Bear Stearns and Company. Along with that certificate, an executed bond power, bearing the Respondent's signature and the purported signature of 'Yehyda Benchemoun' (sic), was delivered to Bear Stearns and Company.

"3.  Mr. Benchemoun never signed the bond power and was unaware that the stock certificate was being negotiated by the Respondent. As a result of that transaction, a $14,-000.00 credit was applied to account number 459–00361 in the names of 'David Sabghir and Yehyda Den [sic] Chem Houn JTWROS' (sic) at the brokerage house of Rooney Pace, Inc. On or about October 2, 1985, the Respondent's own account at Providence Securities received a $14,000.00 credit. That credit was used to purchase Nutribevco securities in the Respondent's name alone.

"4.  On or about December 1986, Esagh Moradi retained Respondent to review a commercial lease. Respondent advised Mr. Moradi against that transaction and instead suggested that Mr. Moradi invest in Nutribevco.

"5.  Respondent never disclosed his relationship with Nutribevco or its principals to Mr. Benchemoun or Mr. Moradi.

"6. Respondent maintained an attorney escrow account at the Bank of Commerce which he used for personal business purposes. Respondent deposited in that account funds entrusted to him incident to his practice of law. Between approximately August and September 1985, while Respondent was holding escrow funds entrusted to him as a fiduciary, that account was overdrawn on at least nine occasions.

"7. Respondent failed to maintain and produce for inspection his escrow account records by the New York Grievance Commission, as required by the New York Grievance Commission."

The respondent had also argued that Maryland should not accept the New York findings because New York, unlike Maryland, which requires clear and convincing evidence, *see* Maryland Rule 16–710 d.[9], requires that an attorney's misconduct be proven by only a preponderance of the evidence. The hearing court similarly rejected that argument.

Judge Greene concluded from the facts found:

"As Respondent's acts and omissions occurred before January 1, 1987, Respondent's misconduct is defined by Rule BV1j and the Disciplinary Rules of the Code of Professional Responsibility.

"Under Disciplinary Rule 1–102(A)(4), it is professional misconduct to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Respondent's conduct with Mr Benchemoun and Mr. Moradi involving Nutribevco in the previously mentioned facts involve dishonesty, ∴aud, deceit and misrepresentation. Additionally, Respondent's use of his escrow account for Nutribevco stock transactions, and failure to maintain escrow records involve dishonesty, fraud,

---

**9.** That rule, in relevant part, provides:

"d. Hearings—Conducted as Civil Cases. The hearing of charges is governed by the same rules of law, evidence and procedure as are applicable to the trial of civil proceedings in equity. Factual findings shall be supported by clear and convincing evidence."

deceit and misrepresentation. Therefore, Respondent violated Rule 1–102(A)(4).

"Under Disciplinary Rule 1–102(A)(6),[10] it is professional misconduct to engage in conduct that adversely reflects on fitness to practice law. As described in the facts, Respondent's conduct with Mr. Benchemoun and Mr. Moradi involving Nutribevco adversely reflects upon Respondent's fitness to practice law. Also, Respondent's conduct in maintaining his escrow account adversely reflected on his ability to practice law. Therefore, Respondent violated Disciplinary Rule 1–102(A)(6).

"Under Disciplinary Rule 5–101(A), it is professional misconduct for an attorney to accept employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by his own financial, business, property or personal interests except with the consent of the client and after full disclosure by the attorney. Since Mr. Benchemoun and Mr. Moradi were Respondent's clients, Respondent allowed personal financial interests to impair his professional judgment on behalf of his clients. Therefore, Respondent violated Disciplinary Rule 5–101(A).

"Under Disciplinary Rule 5–104(A), it is professional misconduct to enter into a business transaction with a client if they have differing interests therein for the protection of the client, unless the client has consented after full disclosure. Since Mr. Bennchemoun and Mr. Moradi were Respondent's clients, and Respondent's interests differed, Respondent's business transactions, as previously described in the facts, were improper. Therefore, Respondent violated Disciplinary Rule 5–104(A).

---

10. Throughout its Findings of Fact and Conclusions of Law, the hearing court refers to Disciplinary Rule 1–102(A)(7). While that is the rule that he was found by the New York court of violating and it was in effect in New York, the corresponding rule in effect in Maryland was Disciplinary Rule 1–102(A)(6). It was in order to make that point and to ensure that the record is correct that Bar Counsel took an exception, which, for the same purposes, we grant.

"Under Disciplinary Rule 9–102, it is professional misconduct for an attorney to abuse his fiduciary responsibility of preserving the identity of funds and the property of a client. Disciplinary Rule 9–102(A) prohibits a lawyer's funds from being deposited into an escrow account. Disciplinary Rule 9–102(B) requires a lawyer to maintain complete records of all client funds coming into the possession of the lawyer. Respondent's transactions with Mr. Benchemoun and Mr. Moradi was an abuse of his fiduciary responsibility. Similarly, Respondent's commingling escrow account funds with personal and or business funds and failing to maintain escrow account records also constitutes an abuse of his fiduciary responsibility. Therefore, Respondent violated Disciplinary Rule 9–102(A) and (B)."

## II

Aggrieved by the hearing court's findings of fact and conclusions of law, the respondent has filed exceptions. Citing *Selling v. Radford,* 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585, 587–88 (1917) and *Nevada v. Hall,* 440 U.S. 410, 414, 99 S.Ct. 1182, 1185, 59 L.Ed.2d 416, 420–21 (1979), the respondent proceeds on the premise that, "in a disciplinary proceeding, the court of the receiving state (here Maryland) is obligated to give effect to the fact that in the other State (here New York) the Respondent is no longer free to practice law in the other State. However, it is not bound by the result reached, and may reach its own conclusions with respect to the propriety of the procedure used, the findings of fact made and the remedy to be imposed . . . given the regulatory nature of the Code of Professional Conduct and its predecessor the Canons of Ethics, this Court is not constitutionally bound to follow the findings or conclusions of the New York courts in this proceeding." (Footnote omitted). Thus, he challenges the hearing court's acceptance of the New York court's findings that he violated the charged disciplinary rules in his interaction with both Mr. Benchemoun and Mr. Moradi, arguing that the New York judgment in that regard is not conclusive proof, binding on the hearing court, of his misconduct. The respon-

dent also does not accept the hearing court's conclusion that the testimony of his witnesses did not provide proof by a preponderance of the evidence of mitigating circumstances or to rebut the finding of misconduct by the New York court. As he sees it, four infirmities exist in the New York proceedings which require this Court to refuse to give those proceedings, the facts found or the sanctions imposed therein, any weight.

The first infirmity the respondent identifies is the difference in the standard of proof required in Maryland and New York disciplinary proceedings. Citing *Attorney Grievance Commission v. Powell*, 328 Md. 276, 287, 614 A.2d 102, 108 (1992) and *Attorney Grievance Commission v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990), he points out that, in Maryland, as in the majority of states, misconduct must be proven by "clear and convincing" evidence. New York, on the other hand, has a lower standard of proof—it requires only a "fair preponderance of the evidence." (Citing *In re Capoccia*, 59 N.Y.2d 549, 466 N.Y.S.2d 268, 269, 453 N.E.2d 497, 498 (1983)). Maintaining that, "given the regulatory nature of the Code of Professional Conduct and its predecessor the Canons of Ethics, this Court is not constitutionally bound to follow the findings or conclusions of the New York courts in this proceeding," and that "the rules in Title 16 of the Maryland Rules governing reciprocal discipline obviously are based on notions of comity and convenience," the respondent argues that this Court, at a minimum, consistent with its obligation to do so independently, *Powell*, 328 Md. at 287, 614 A.2d at 108, should review the record of the New York proceedings to determine if there is clear and convincing evidence of misconduct.

The second infirmity of the New York proceedings is, the respondent asserts, its admission, and use, of hearsay evidence to prove some of the misconduct. The respondent contends that the only evidence of his misconduct with respect to the Moradi matter was a letter that Mr. Moradi's attorney sent to the New York disciplinary authorities. Because Mr. Moradi was out of the country and, thus, did not testify in the proceedings, he continues, the only evidence against him was hearsay. Argues the respondent, Maryland Rule 16–710 d.

provides that attorney disciplinary hearings are governed by the same rules of law, evidence and procedure as are applicable to the trial of civil proceedings in equity. Since attorney disciplinary proceedings are not exempted from Maryland Rule of Evidence 5–101's requirement that the rules of evidence apply to all actions or proceedings in the courts of this State—such proceedings are not among the actions or proceedings in which the rules of evidence do not apply—the respondent earnestly maintains that "the findings of unprofessional, unethical and dishonest behavior regarding the Moradi matter must be rejected because the findings are based on hearsay."

The real culprit in this case is, according to the respondent, Timothy Rafferty. Mr. Rafferty refused to testify in the New York proceedings. Rather than with that aspect of the New York proceedings, the respondent's complaint is with the hearing court's refusal to admit into evidence Mr. Rafferty's affidavit, in which he accepted full responsibility for the actions attributed to the respondent. He argues that, had the affidavit been admitted, it would have been clearly shown by a preponderance of the evidence that he had not engaged in any misconduct. Moreover, the respondent insists that the affidavit was admissible pursuant to Maryland Rule of Evidence 5–804(b)(3) [11] and (5) [12]. He also observes:

---

11. That rule provides, in pertinent part:

"(3) Statement Against Interest. A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

12. Rule 5–804(b)(5) provides:

"(5) Other Exceptions. Under exceptional circumstances, the following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness: A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstan-

" . . . [T]he Circuit Court rejected the proffer of the affidavit on the grounds that it was inadmissible hearsay. The irony here, of course, is that [the respondent] was found to have acted improperly in New York in the Moradi matter on the basis of hearsay evidence which he could not cross examine, but he was unable to clear his name in Maryland by use of hearsay evidence which the Attorney Grievance Commission was unable to cross-examine. Thus, [the respondent] has been whipsawed by evidentiary rules which in each case have been used to his disadvantage."

The final infirmity the respondent identifies relates to the trial referee's conduct of the hearing. The respondent contends that the trial referee denied him due process by interfering with his cross-examination of a key witness, a Securities and Exchange Commission investigator. In particular, he maintains that the referee restricted cross-examination on the basis of a non-existent privilege, the "government privilege."

The respondent's purpose in raising each of the "infirmities" he identifies is to collaterally attack the factual findings made in the New York proceedings; he seeks to relitigate, in the Maryland proceedings, the issue of whether his conduct constituted misconduct.

## III

This case is a reciprocal discipline case. *See Attorney Grievance Commission v. Gittens,* 346 Md. 316, 324, 697 A.2d 83, 87 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md.

---

tial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant."

217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267–68, 653 A.2d 430, 434 (1995); *Attorney Griev. Comm'n v. Hopp,* 330 Md. 177, 185–86, 623 A.2d 193, 197 (1993); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425–26, 550 A.2d 1150, 1152 (1988); *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142–43, 527 A.2d 325, 330 (1987); *Attorney Griev. Comm'n v. Haupt,* 306 Md. 612, 614–15, 510 A.2d 590, 591–92 (1986); *Attorney Griev. Comm'n v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986); *Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984); *Attorney Griev. Comm'n v. Rosen,* 301 Md. 37, 39, 481 A.2d 799, 800 (1984). The conduct that is the subject of the proceedings *sub judice* occurred in New York where the respondent practiced law. As we have seen, following disciplinary proceedings in that court, at which the respondent received notice and had the opportunity to, and did, participate, the Supreme Court of New York, Appellate Division, disbarred the respondent and, thereafter, the New York Court of Appeals denied the respondent's motion for leave to appeal. *Matter of Sabghir,* 211 A.D.2d 337, 628 N.Y.S.2d 381, leave to appeal denied, 86 N.Y.2d 709, 634 N.Y.S.2d 442, 658 N.E.2d 220 (1995). Consequently, the New York adjudication was final.

Maryland Rule 16–710 e., "Conviction of crime—Adjudication of misconduct," provides:

"1. Proof of guilt.–In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime. A plea or verdict of guilty, or a plea of nolo contendere followed by a fine or sentence, is a conviction within the meaning of this Rule. A final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule.

"2. Additional evidence.–The introduction of evidence in a proceeding pursuant to this Rule of an attorney's conviction

of a crime in a judicial tribunal or adjudication of misconduct by a judicial tribunal, does not preclude the Commission from introducing additional evidence nor does it preclude the attorney from introducing evidence or otherwise showing cause why he should not be disciplined."

As we have seen, the respondent was disbarred in New York pursuant to an order of the Supreme Court of New York, Appellate Division. That order was issued only after disciplinary proceedings had been initiated and a hearing had been held to adjudicate the charges preferred. Moreover, the respondent was denied leave to appeal by the Court of Appeals. Thus, the order disbarring the respondent conclusively establishes that the respondent engaged in misconduct, it being a final adjudication in a disciplinary proceeding. *Gittens,* 346 Md. at 325, 697 A.2d at 88; *Willcher,* 340 Md. at 221–22, 665 A.2d at 1061; *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1988). *See also Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 482 A.2d 497 (1984).

The respondent points out, and correctly so, that Rule 16–710 e 2. permits the attorney proceeded against to introduce additional evidence into the record in Maryland. That rule also does not "preclude the attorney from ... otherwise showing why he should not be disciplined." This Court has construed former Rule BV4 f, a precursor of Rule 16–710 e., concluding that paragraph f 2 of that rule related to mitigation. *Maryland State Bar Ass'n, Inc. v. Rosenberg,* 273 Md. 351, 329 A.2d 106 (1974). We explained:

"Rule BV4 f 2 provides that, notwithstanding the provisions of Rule BV4 f 1, any party to a disciplinary proceeding may introduce additional evidence. While the question of guilt may not be relitigated, an opportunity for a meaningful hearing is thereby afforded to adduce evidence in mitigation of the offense in order to ascertain the appropriate disciplinary sanction to be applied for the attorney's misconduct."

*Id.* at 355, 329 A.2d at 108. *See also In re Keogh,* 267 N.Y.S.2d 87, 88, 25 A.D.2d 499, (1965) ("Respondent is not entitled to a relitigation, at the hearings to be held by the

Referee, of the facts upon which respondent's judgment of conviction was based or of the fairness of the trial in the federal court at which he was found guilty...."); *Matter of Reciprocal Discipline of Devers*, 317 Or. 261, 855 P.2d 617, 619 (1993) ("That is, in a reciprocal discipline proceeding, the accused has no opportunity to challenge in Oregon the underlying factual findings of the other jurisdiction.").[13] Accordingly, we decline to revisit, or allow the respondent collaterally to attack, either the findings of fact made by the New York court or the judgment it rendered.

Nor does the fact that New York's standard of proof of attorney misconduct is lower than that required in Maryland cause this Court to reject the factual findings made by the New York court. Although we have not had the occasion to decide the issue,[14] the District of Columbia Court of Appeals

---

13. In a footnote that we have omitted, the Oregon court noted that, by rule, it has discretion to refer a reciprocal discipline matter to the Disciplinary Board to take testimony on the issues of notice and the propriety of the court disciplining the attorney.

14. In *Attorney Grievance Commission v. Miller*, 310 Md. 163, 528 A.2d 481 (1987), Bar Counsel brought charges against the respondent after an adjudication by the Interstate Commerce Commission resulting in a finding, by a preponderance of the evidence, that the respondent had violated canons 7 and 9 of the Code of Ethics for Practitioners before the Commission. The hearing court noted that Maryland required that such conduct be proven by clear and convincing evidence, but pointed out that neither the Maryland BV Rules, then in effect, nor appellate decisions distinguished between the final determinations by a judicial tribunal in states requiring clear and convincing evidence and those which require only a preponderance of the evidence. It concluded that "The Interstate Commerce Commission is an administrative agency, not a judicial tribunal nor a disciplinary agency appointed by or acting at the direction of a judicial tribunal." The court also rejected Bar Counsel's argument that the federal appellate court that reviewed the Interstate Commerce Commission's decision was the judicial tribunal, whose "finding of misconduct" constituted "conclusive proof of the misconduct." This Court sided with the hearing court, stating:

"The proceeding before the United States Court of Appeals was not a 'disciplinary proceeding by a judicial tribunal.' The decision of the federal appellate court was not an 'adjudication' by that court that the attorneys were guilty of misconduct. While the matter before the Interstate Commerce Commission was a disciplinary proceeding, the case before the United States Court of Appeals was a judicial review

has recently done so. *See In re Benjamin,* 698 A.2d 434, 440 (D.C.1997). In that case, the District of Columbia Court of appeals concluded, with respect to New York's lower standard of proof, that, "since the potential loss of livelihood through disbarment is more aptly categorized as only a property right, we see no problem in accepting another state's use of a lower standard of proof than our own in reciprocal discipline cases." Indeed, that court pointed out that it has itself characterized disciplinary proceedings as being concerned with property rights and, so, are subject to due process considerations. *Id.* at 439. Moreover, it noted, the District of Columbia's higher standard is not constitutionally mandated. *Id.* Finally, the Court observed that the New York standard is premised on the rationale that "clear and convincing evidence" is only required in cases involving "the denial of personal or liberty rights," *id.* at 439, quoting *Capoccia,* 466 N.Y.S.2d at 269–70, 453 N.E.2d at 499, and that, in New York, "the privilege of practicing law, once extended, is not a liberty interest or a personal right 'as to which the higher standard of proof has not been required.' " *Id.*

Although it has not specifically characterized it as either a property right or a personal or liberty right, this Court has recognized, consistent with the United States Supreme Court, *see Willner v. Committee on Character,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Schware v. Bd. of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), that the privilege of practicing law is a valuable one and that the requirements of procedural due process must be met before a

---

action under the federal Administrative Procedure Act, 5 U.S.C. §§ 701–706. Unlike the present case before this Court, the question to be decided by the United States Court of Appeals in Polydoroff was not whether an attorney was guilty of misconduct and should be disciplined. Instead, the question before the federal court was whether the decision of the Interstate Commerce Commission was 'arbitrary, capricious, an abuse of discretion, . . . not in accordance with law; . . . contrary to constitutional right . . .; in excess of statutory jurisdiction . . .; [or] unsupported by substantial evidence. . . .' 5 U.S.C. § 706."
Thus, although the hearing court resolved the different standard of proof issue, this Court had no occasion to do so.

State can exclude a person from practicing law. *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 330, 379 A.2d 171, 176 (1977). But it has also noted that there is no vested right in an individual to practice law and that the State is free to bestow the privilege upon such conditions governing its exercise as will be consistent with the privilege's nature and purpose. *Id.* at 331, 379 A.2d at 176. *See also Matter of Isserman,* 345 U.S. 286, 73 S.Ct. 676, 97 L.Ed. 1013 (1953); *Fellner v. Bar Ass'n,* 213 Md. 243, 131 A.2d 729 (1957); *In re Collins,* 188 Cal. 701, 206 P. 990 (1922). Moreover, given its rationale, that New York applies a lower standard of proof in attorney discipline cases does not mean, and certainly there is no evidence, that New York treats attorney discipline matters "less seriously or wholly inconsistently with the manner exercised by this Court." *Gittens,* 346 Md. at 327, 697 A.2d at 88. Indeed, the opposite appears to be the case. Consequently, like the District of Columbia Court of Appeals, we see no problem accepting New York's lower standard of proof in reciprocal discipline cases.

■■■■ This Court has often imposed sanctions, in reciprocal discipline cases, of facially equal severity to those imposed by a sister state, *see, e.g., Bettis,* 305 Md. 452, 505 A.2d 492; *Moore,* 301 Md. 169, 482 A.2d 497; *Attorney Griev. Comm'n v. James,* 300 Md. 297, 305–06, 477 A.2d 1185, 1189 (1984); *Attorney Griev. Comm'n v. Hines,* 304 Md. 625, 500 A.2d 646 (1985); *Rosen,* 301 Md. 37, 481 A.2d 799. Nevertheless, there is no requirement that this should be done; we need not impose the same sanction as that imposed by the other jurisdiction. In fact, this Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission. *Gittens,* 346 Md. at 326, 697 A.2d at 88. Indeed, we have stated the rule in reciprocal discipline cases to be:

"When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and

circumstances of each case, but with a view toward consistent dispositions for similar misconduct."

*Willcher,* 340 Md. at 222, 665 A.2d at 1061 (1995) (quoting *Parsons,* 310 Md. at 142, 527 A.2d at 330). Because one of the factors to be considered is the disciplinary determination of the jurisdiction where the misconduct occurred, we have deferred to the action taken by that jurisdiction where the purpose of attorney discipline is the same in both jurisdictions. *Gittens,* 346 Md. at 327, 697 A.2d at 88. In any event, the burden is on the respondent to demonstrate that less severe discipline than imposed in the other jurisdiction, or no discipline, should be imposed in this State. *People v. Calder,* 897 P.2d 831, 832 (Colo.1995); *The Florida Bar v. Friedman,* 646 So.2d 188, 190 (Fla.1994). In Maryland, that burden is "preponderance of the evidence." *Powell,* 328 Md. at 288, 614 A.2d at 109. *Attorney Griev. Comm'n v. Bakas,* 322 Md. 603, 605, 589 A.2d 52, 53 (1991).

■ It is well settled in this State that misappropriation, by an attorney, of funds entrusted to his or her care "is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. Williams,* 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attorney Griev. Comm'n v. Casalino,* 335 Md. 446, 644 A.2d 43, 46 (1994); *Attorney Griev. Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988). Similarly, disbarment is appropriate for other conduct involving fraud, deceit and dishonesty. *Willcher,* 340 Md. at 223, 665 A.2d at 1061; *Ezrin,* 312 Md. at 608–09, 541 A.2d at 969.

Boiled down to essentials, the respondent was found to have misappropriated client funds and otherwise to have engaged in conduct involving fraud, deceit and dishonesty. It is the respondent's burden to establish compelling extenuating circumstances justifying a lesser sanction. *Bakas,* 323 Md. at

403, 593 A.2d at 1091. The respondent's testimony and that of his expert may be viewed as attempting to meet that burden. Unfortunately, the hearing court determined that evidence to be insufficient, finding that it did not rise to the level of preponderance. We shall not disturb the hearing court's factual findings unless clearly erroneous, *Attorney Griev. Comm'n v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985); *Attorney Griev. Comm'n v. Collins,* 295 Md. 532, 548, 457 A.2d 1134, 1142 (1983) (quoting *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981)), and that finding is not.

■ As the Commission points out, "disbarment is consistent with the dispositions of cases involving similar misconduct before this Court, while also giving deference to the disciplinary sanction imposed against the Respondent in New York." Accordingly, we shall order the respondent disbarred from the practice of law in Maryland.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715.c. FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAVID SHAMMAI SABGHIR.