888 A.2d 292

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Michael J. THERIAULT.**

**Misc. Docket AG No. 48, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 15, 2005.

John C. Broderick, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Michael J. Theriault, Bel Air, for respondent.

Argued before BELL, C.J. RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

In a Petition For Disciplinary Action, filed pursuant to Maryland Rule 16–751,[1] Bar Counsel, acting at the direction of the Attorney Grievance Commission Of Maryland, the petitioner, alleged that Michael John Theriault, the respondent, engaged in misconduct as reflected in his violation of certain of the Rules of Professional Conduct, as adopted by Maryland Rule 16–812, other Maryland rules and statutes, including criminal statutes. Most of the allegations, pertaining to the alleged commingling and misappropriation of trust funds, were the result of an investigation, prompted by Bar Counsel's receipt of a report from the respondent's bank that a check drawn on the respondent's IOLTA Attorney Trust Account had been returned for insufficient funds. They included:

1. Maryland Rule 16–751, as relevant, provides:
 "(a) Commencement of Disciplinary or Remedial Action.
 "(1) *Upon Approval of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

theft,[2] misuse of trust money,[3] violation of Rule 16–609, Prohibited Transactions,[4] and violation of Rules of Professional Conduct 1.15, Safekeeping Property,[5] and 8.4, Misconduct.[6]

---

2. Bar Counsel charged violations of Maryland Code (2002) § 7–104, the general theft provisions, and § 7–113, "Embezzlement—Fraudulent misappropriation by fiduciaries," of the Criminal Law Article, as well as Maryland Code (1957, ——— Replacement Volume) Article 27, § 132, the predecessor to § 7–113, and § 342, the predecessor to § 7–104.

3. Maryland Code (1989, ——— Replacement Volume) § 10–306 of the Business Occupations and Professions Article, which provides:
 "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

4. Maryland 16–609 provides:
 "An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to case or to bearer."

5. As relevant, Rule 1.15 provided:
 "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."
 Effective July 1, 2005, as a result of Court action on February 8, 2005, Rule 1.15 was amended. As amended, among changes, subsection (b) has been renumbered subsection (d).

6. Rule 8.4, as pertinent, provides:
 \* \* \* \* \* \*
 "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

The other allegation related to a domestic violence charge brought by the respondent's spouse and the resultant protective order entered in the case. It was that the respondent assaulted her in the second degree and, in so doing, violated Maryland Code (2002) § 3–203 of the criminal Law Article.[7]

We referred the case, pursuant to Rules 16–752(a),[8] to the Honorable Maurice W. Baldwin, Jr., of the Circuit Court for Harford County, for hearing pursuant to Rule 16–757(c).[9] Although he was served, the respondent did not file a response, resulting in the entry of an order of default. Rather than move to vacate order of default, the respondent filed an untimely answer to the Petition, which prompted the petitioner to file a Motion to Strike Respondent's Answer. Following a hearing on that motion, at which the respondent appeared, in proper person, and participated, the hearing court granted the petitioner's motion and, proceeding to the default hearing,

---

"(d) engage in conduct that is prejudicial to the administration of justice"

\* \* \* \* \* \*

7. Md.Code (2002) § 3–201(b) of the Criminal Law Article provides that "Assault' means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings."

8. Rule 16–752(a) provides:
 "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

9. Maryland Rule 16–757(c) provides:
 "(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

accepted the petitioner's proposed findings of fact and conclusions of law and adopted them as its own. They are:

"[I]t is the finding of this court, as being established by clear an[d] convincing evidence that Michael John Theriault was admitted to the Bar of this Court on December 14, 1995 and presently stands decertified by order of the Court of Appeals dated April 4, 2005 for non payment of his mandatory bar dues.[10]

## "BC DOCKET NO. 2003–252–3–6 *COMPLAINANT: BAR COUNSEL*

"The court finds that on December 27, 2002 the Petitioner received notice from First Union National Bank, pursuant to Maryland Rule 16–610 b 1(B) and Rule 16–610 b 1(C). That notice indicated the account in the name of Michael J. Theriault, Esquire, IOLTA Attorney Trust Account No. 2044004481812 was charged with a check drawn against insufficient funds in the amount of $ 8,000 when the available balance was only $ 5, 829.

"The check, number 162 was drawn on December 14, 2002 payable to the order of Baltimore Sun, Inc. and Marshall Grier in the amount of $ 8, 000 bearing the signature of the account holder, and Respondent herein, Michael J. Theriault, Esquire.

"The Respondent was placed upon notice by letter dated January 8, 2003 and was asked to provide a full explanation for the overdraft as well as to provide copies of his client ledger cards, deposit slips, canceled checks, and monthly bank statements for the period beginning July, 2002 through and including December, 2002. By letter dated January 16, 2003 the Respondent provided a response and documents which, upon review precipitated a docketed disciplinary file being

---

10. There are no mandatory bar dues in Maryland, since we do not have a mandatory bar. The reference here is to the mandatory assessment of the Client Protection Fund. Decertification is the sanction for the failure to pay those assessments. *See* Maryland Rule 16–811(f)(4).

opened against Respondent bearing BC Docket No. 2003–253–03–6. In connection with that disciplinary investigation a notice letter was sent to the Respondent dated January 27, 2003 stating a review of his previously provided financial records indicated the possibility of commingling in his fiduciary account as well as a possibility of misuse of fiduciary funds entrusted to him. He was asked to provide an explanation for each of the payees noted on the checks provided with his earlier January 16th response and specifically asked to address payments made to an individual as payee, namely Coy Condon, which appeared to be for personal purposes. By response dated February 5, 2003 the Respondent provided further documents and explanation.

"An analysis of Respondent's explanations, response, and records of his fiduciary account revealed the Respondent received funds in his fiduciary account, by December 16, 2002, on behalf of the Estate of Ethel Brenner totaling $ 2, 750 but made no disbursement attributable to that estate during the time within which he held these funds in a fiduciary capacity. On December 31, 2002 the balance in Respondent's trust account was reduced to only $ 211.44 which constituted an out of balance position in his fiduciary account in excess of $ 2,500 attributed to that client alone.

"Further analysis of Respondent's response and financial records revealed he received a settlement of $ 8, 000 on behalf of the Emkay Distributors Account on October 23, 2002. By check number 162, on December 31, 2002 he made full distribution of that amount but the balance in his escrow account had diminished on December 10, 2002 to the amount of $ 4, 611.44. This constituted a misappropriation of fiduciary funds in the approximate amount of $ 3, 388.56 attributed to that client alone.

"Also disclosed upon analysis of Respondent's financial records was that he received an insurance settlement in the amount of $1, 642 on behalf of his client Thuy Ta on August 21, 2002. For the period within which financial records were reviewed there was no distribution of these funds on behalf of

the client. Nonetheless, the balance reflected on his account statement on December 31, 2002 was diminished to only $ 211.44 thereby evidencing an out of balance position of more than $ 1,400 attributed to that client alone. The Respondent was, by letter dated July 7, 2003 asked to respond to the result of this analysis evidencing apparent misappropriation of fiduciary funds.

"The court finds that upon further explanation from the Respondent dated July 20, 2003 an additional request for information and explanation was forwarded to Respondent by letter dated July 31, 2003. That request was responded to by letter dated August 14, 2003 and Respondent provided additional information on the matter of his client Thuy Ta and the Estate of Ethel Brenner. Subsequently a meeting between the Respondent, Assistant Bar Counsel and a paralegal of the Petitioner, was scheduled to take place on September 24, 2003.

"At the meeting scheduled for September 24, 2003 the Respondent was requested to provide additional documentation and explanation in connection with the matters addressed in the earlier correspondence of July 31, 2003 representing the inquir[i]es into three different areas of his handling of fiduciary funds. During that meeting Respondent admitted and acknowledged he did not handle fiduciary funds properly and misappropriated, at least, the estate funds entrusted to him in the matter of the Estate of Ethel Brenner.

"On January 12, 2004 the Respondent was arrested and charged in Harford County, Maryland, at his home, with second degree assault (domestic) and was the subject of a Final protective Order dated January 20, 2004 in the District Court of Maryland for Harford County in Case No. 0901SP001682004. The court finds that the Respondent did assault Katrina Rose, his wife, in the second degree in violation of Criminal Section 3–203."

On those factual findings, the hearing court concluded that the Respondent violated each of the Maryland Rules and statutes charged. It also determined that there was no mitigation in this case, that the evidence to which the respondent

directed the court to look and which consisted of "a few self-serving letters relating to some problems in his personal life," "[did] not establish any medical, psychiatric, or other condition which would act to mitigate the findings of fact or conclusions of law found. . . ."

Neither the petitioner nor the respondent took exceptions to the hearing court's Findings of Fact or Conclusions of Law. The petitioner did, however, file *Petitioner's Recommendation For Sanction*, in which it urged this Court to order the respondent disbarred. Although the respondent did not file a written recommendation, it is fair to say that he does not agree with the petitioner's sanction recommendation. He appeared at the argument, urging, despite the failure to file exceptions, that he did not intentionally misappropriate any trust funds and that intentional misappropriation had not been proven.

The hearing court found that, for the period for which the respondent's trust account records were reviewed, the respondent, on more than one occasion, received client funds, which were placed in his trust account, but not disbursed to the client timely. In addition the hearing court determined that the respondent was "out of trust," and significantly so, with respect to each of the clients whose cases were reviewed. Moreover, and necessarily, the hearing court held, the respondent used these funds for purposes other than for which they were entrusted. Based on these findings, and including the respondent's admission that, with respect at least to the estate matter, he did not handle fiduciary funds properly and misappropriated the estate funds entrusted to him, it concluded that the respondent not only misused trust funds, but that he stole, embezzled and fraudulently misappropriated client funds.

■ On our independent review of the record, we are satisfied the hearing court's findings of fact are supported by clear and convincing evidence, *Attorney Griev. Comm'n v. Davis*, 375 Md. 131, 157–58, 825 A.2d 430, 445–46 (2003); *Attorney Griev. Comm'n v. Link*, 380 Md. 405, 420, 844 A.2d 1197, 1207 (2004). Moreover, reviewing the hearing court's

conclusions of law *de novo,* as we must, *Attorney Griev. Comm'n v. Kreamer,* 387 Md. 503, 519, 876 A.2d 79,89 (2005), it is clear that they follow from the facts found. *Link,* 380 Md. 405, 420, 844 A.2d 1197, 1207 ("the ultimate question, whether a lawyer has violated the professional rules, what, in other words, to make of those facts, rests with this Court").

 Although "[t]he primary purpose in imposing discipline on an attorney for violation of the Rules of Professional Conduct is not to punish the lawyer but rather to protect the public and the public's confidence in the legal profession," *Attorney Griev. Comm'n v. Stein,* 373 Md. 531, 533, 819 A.2d 372, 375 (2003), and that most appropriately and likely will occur when sanctions commensurate with the nature and gravity of the violations and the intent with which they were committed are imposed, *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). *See Attorney Griev. Comm'n v. Sheinbein,* 372 Md. 224, 255, 812 A.2d 981, 999 (2002); *Attorney Griev. Comm'n v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999); *Attorney Griev. Comm'n v. Webster,* 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998), we have long since made clear the seriousness with which we view acts of misappropriation. They are, we have said, and repeated often, "act[s] infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991). See *Attorney Griev. Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Attorney Griev. Comm'n v. Sullivan,* 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002); *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001). It is the respondent's burden to establish compelling extenuating circumstances justifying a lesser sanction. *Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 84–85, 710 A.2d 926, 934 (1998); *Bakas,* 323 Md. at 403, 593 A.2d at 1091. That showing must be by a preponderance of the evidence. *Sabghir,* 350 Md. at 85, 710 A.2d at 934.

The respondent directed the hearing court's attention to the petitioner's exhibit 1, in which he maintained could, and would be found, evidence favorable to the respondent, that would mitigate the findings of fact or conclusions of law. The hearing court accepted the respondent's invitation to review that exhibit, but unfortunately for the respondent, it found it lacking in mitigating value and so found. Consequently, this record does not contain any compelling extenuating circumstances that justifies a lesser sanction. Accordingly, the petitioner's recommendation is accepted, the respondent is ordered disbarred.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MICHAEL JOHN THERIAULT.