623 A.2d 193

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Kenneth Harvey HOPP.**

**Misc. (Subtitle BV) No. 18, Sept. Term, 1992.**

Court of Appeals of Maryland.

April 23, 1993.

Melvin Hirshman, Bar Counsel and Kendall R. Calhoun, Asst. Bar Counsel, Annapolis, for the Attorney Grievance Com'n of Maryland, petitioner.

No appearance on behalf of respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired and specially assigned).

ROBERT M. BELL, Judge.

The Attorney Grievance Commission of Maryland, the petitioner, filed, on July 24, 1992, at the direction of the Review Board, *see* Maryland Rule BV7.b., a Petition for Disciplinary Action (the "Petition") against Kenneth Harvey Hopp, the respondent. The charges involved the respondent's handling, in 1979 and 1980, of two matters in California.[1] Although he was admitted to the practice of law in Maryland on July 30, 1958, the respondent has not practiced in this State since 1962 and does not maintain an office here. The petition charged that the respondent misused client funds and failed to account for those funds when requested.[2] We referred the case to the Honorable Warren

1. The respondent resigned from the California Bar, on September 30, 1989, while disciplinary charges involving the identical matters that are the subject of the petition were pending against him.

2. The allegations were as follows. In the Quirk case, the respondent was a trustee under a trust established for estate planning purposes. When insurance proceeds to fund the trust were turned over to the respondent, he made loans which were not authorized by his co-trustee. Because the respondent failed to take reasonable precautions to secure the loans, the trust suffered losses when the borrowers defaulted. In addition, despite requests that he disclose and the fact that he was under court order to do so, the respondent did not provide an accounting to the co-trustee until he appeared, pursuant to another court order, for deposition. The respondent thereafter stipulated to a

B. Duckett, Jr., of the Circuit Court for Anne Arundel County, for hearing. *See* Maryland Rule BV9.b.

The respondent was served, on July 27, 1992, with the Petition for Disciplinary Action, Interrogatories, and Request for Admission of Facts and Genuineness of Documents. Rather than file responsive pleadings, the respondent, by motion filed August 12, 1992 in this Court, moved to dismiss for lack of jurisdiction. He also filed a Supplemental Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction on September 4, 1992. We denied the motion to dismiss on September 14, 1992. The respondent did not thereafter file in the circuit court any answer to the petition or response to the interrogatories or to the request for admission of facts. Consequently, the petitioner filed a motion for order of default. See Maryland Rule 2–613.[3]

---

judgment being entered against him for losses to the trust caused by the loan defaults and for other funds he did not account for.

In the other matter, the Lyons case, the respondent agreed with an elderly client that, for a fee, he would pay her bills, provided his name was added to her bank accounts; give regular accountings of her assets; upon her death, distribute monies according to the provisions of her will; and look into increasing her income from investments. No action was to be undertaken as to the latter without the approval of the client. Between the time that the agreement was made and the client's death, the respondent only wrote one letter to the client and, in that letter, he simply set forth her assets and how they were being held. On the day that the client died, the respondent withdrew from her savings account or certificate of deposit $80,000 which he deposited in her checking account. Thereafter, he wrote a check for that amount, made payable to an escrow company. Ultimately, he loaned the $80,000 to two individuals for the construction of a duplex. The loan agreement provided that the respondent was to receive 4.5 percent of the loan amount for monitoring the construction and payments from escrow. The respondent eventually took title to the property securing the loan, and held it as his sole and separate property. When his client's heirs objected to the investment, he maintained that his offer letter established an *inter. vivos* trust and that he made the loan commitment prior to his client's death. The heirs obtained a preliminary injunction against the respondent and, thereafter, a stipulated judgment was entered against him in the amount of $145,000. The property was foreclosed upon and respondent and the other defendants filed for bankruptcy. The estate sustained substantial losses as a result.

**3.** Rule 2–613(a) provides:

By order dated October 14, 1992, Judge Duckett entered the order of default. As required by Rule 2–613(b), that order directed the clerk to "issue a notice informing the defendant that an order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry." In addition, it provided "that leave be granted to the Petitioner, after the expiration of the thirty (30) days, to present such evidence as it deems necessary to allow the court to carry out its function under Maryland Rule BV11.a...." The respondent filed a Response To Motion for Order of Default and again moved to dismiss; however, while addressing the reason for his failure to plead, the motion to dismiss did not set forth "the legal and factual basis for a defense to the claim." *See* Rule 2–613(e). Instead, the motion reiterated the respondent's contention that this Court lacked jurisdiction to discipline him.[4]

The hearing was held on January 5, 1992. The respondent did not appear and the petitioner did not call any witnesses. To prove its case, the petitioner offered the petition and the Request For Admission of Facts and Genuineness of Documents, the attachments to which were documents from civil cases filed against the respondent in California.[5] Having summarized the allegations of the petition by way of proffer as to what she would have proven had the respondent appeared at the hearing, and after noting that the respondent did not respond either to the petition or

---

(a) *Order of default.* If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. That the request shall state the last known address of the defendant.

4. The petitioner subsequently moved to dismiss the motion to dismiss and to strike the respondent's response to the motion for order of default. The motion was granted, by the circuit court, on November 4, 1992.

5. The petitioner also offered a letter from the respondent, dated November 30, 1992, which indicated that the respondent did not intend to appear at the hearing.

the request for admission of facts, bar counsel asked, pursuant to Maryland Rule 2–323(e) and 2–424(b), respectively, that the court deem the allegations of the petition and the admissions in the request for admission of facts to be admitted.

Based on those admissions, Judge Duckett concluded:

Respondent made unauthorized and ill-advised loans from trust funds in the Quirk matter and failed to properly account for those trust funds in violation of Disciplinary Rules 1–102(A)(1)(5)(6); 6–101(A)(1)(2)(3) and 9–102(A)(B).

In the Mamie Lyons matter the Respondent misused Estate funds to his own advantage. Respondent took property as security for the estate funds in his own name and failed to show that he was holding that property in trust. Finally, Respondent failed to account for the funds with which he was entrusted and caused a substantial loss to the Estate of Mamie Lyons. This conduct violated Disciplinary Rules 1–102(A)(1)(4)(5)(6); 6–101(A)(1)(2)(3); 7–101(A)(1)(2)(3) and 9–102(A)(B).

Neither the petitioner nor the respondent filed exceptions. The petitioner did file a recommendation that the respondent be disbarred, however. *See* Maryland Rule BV11.b.2. The respondent responded to that recommendation.

In his Response to Petitioner's Recommendation, the respondent repeated a theme, the foundation for which was laid soon after he was notified of the pendency of disciplinary proceedings in Maryland—that he is "not subject to the present proceedings. A disbarment will not change my present status." His motion to dismiss for lack of jurisdiction pointed out that, upon first being notified of an investigation by the petitioner, he submitted a letter of resignation from the Maryland Bar; that he is not now, and has not been since July 1962, a resident of, nor a practitioner of law in, Maryland; and that all of the allegations in the petition pertained to actions occurring in California and involving California, rather than Maryland, residents. Concluding

that Maryland lacks jurisdiction to adjudicate disciplinary proceedings against him, the respondent observed: "[p]etitioner is in the peculiar position of keeping Respondent in the Maryland Bar solely for the privilege of throwing him out." He requested that the petition be dismissed or that the petitioner be required to file a supplemental petition setting forth the basis for its jurisdiction over him. This theme was repeated in the supplemental memorandum he filed and in his response to the petitioner's Motion For Order of Default.

■ A person who is not an attorney is not subject to discipline under the BV Rules. *Attorney Grievance Commission v. Hyatt*, 302 Md. 683, 688–89, 490 A.2d 1224, 1227 (1985). Rule BV1.a. defines "attorney" as

any person admitted by the Court of Appeals to practice law. For purposes of discipline or inactive status, the term also includes a member of the bar of any other state, district, or territory of the United States who engages in the practice of law in this State, or who holds himself or herself out as practicing law in this State, or who has the obligation of supervision or control over another attorney who engages in the practice of law in this State.

■ The respondent was admitted to the bar of this State, by this Court, in 1958. That he moved from Maryland and has not practiced law here since 1962, practicing only in California, to the bar of which he was also admitted, does not affect his bar status in this State. He did not tender his resignation either when he ceased practicing law here, or when he left the State. He only did so when notified that a disciplinary investigation was pending against him in this State. He contends that his tender of a letter of resignation at that time was sufficient to terminate his bar membership. On that point, the respondent is incorrect.

BV12.d.1. provides:

### d. *Disbarment by Consent of Attorney Under Investigation.*

1. *Attorney may not resign.* An attorney may not resign while he is the subject of investigation into, or pending proceedings involving allegations of his misconduct.

Although the respondent submitted a letter of resignation, it was not accepted, and, indeed, given the circumstances under which it was tendered, it could not have been. Consequently, the respondent has remained, at all times pertinent to these proceedings, a member of the bar of the State of Maryland and this Court has jurisdiction over him for purposes of disciplinary action under the BV Rules.[6]

■ California initiated disciplinary proceedings, pertaining to the same matter alleged herein, against the respondent. There was no adjudication of those charges, however; as he was allowed to do pursuant to California Rule 960,[7]

---

6. On April 15, 1986, effective January 1, 1987, we adopted the Maryland Rules of Professional Conduct. Rule 8.5 addresses the jurisdiction of this Court to discipline attorneys. As pertinent to the case *sub judice,* it provides:
   (a) A lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for a violation of these rules in this or any other jurisdiction.
   This rule made explicit what was implicit in Rule BV1.a. *See also* California Rule of Professional Conduct 1–100(D)(1) ("These rules shall govern the activities of members in and outside this state...."); District of Columbia Rule of Professional Conduct 8.5 ("A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere"); The American Bar Association's Annotated Model Rule 8.5 ("A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.") The comment to Model Rule 8.5 acknowledges that in the modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice; nevertheless, in doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice.

7. Rule 960(a) permits "[a] member of the State Bar against whom disciplinary charges are pending [to] tender a written resignation from membership in the State Bar and relinquishment of the right to practice law," provided that he or she performs specified acts, involving giving notice of the resignation, returning unearned fees and

the respondent resigned from the California bar while those proceedings were pending. Thus, although Maryland has jurisdiction to sanction conduct committed by Maryland lawyers in another state which results in a final adjudication of misconduct or a criminal conviction, *see* BV10.e., the fact that there was not, in this case, a final adjudication of misconduct by a judicial tribunal does not deprive the Court of jurisdiction. Certainly, where, as here, disciplinary proceedings in another State were pending against the lawyer when he chose to resign, reinstatement to the bar of that State being dependent upon the resolution of the disciplinary proceedings precipitating the resignation, there is a sufficient predicate to permit any other court with jurisdiction over the lawyer to adjudicate the unresolved charges. Reciprocal discipline cases, *see, e.g., Attorney Grievance Commission v. Sparrow*, 314 Md. 421, 550 A.2d 1150 (1988), are not the only cases in which a court with concurrent jurisdiction for disciplinary purposes may proceed.

█ It is well settled that the purpose of disciplining a lawyer for professional misconduct is to protect the public and to preserve public confidence in the legal profession, rather than to punish the lawyer or to provide a basis upon which to impose liability. *Attorney Grievance Commission v. Hamby*, 322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Grievance Commission v. Kolodner*, 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989); *In re: Special Investigation No. 231*, 295 Md. 366, 374, 455 A.2d 442, 446 (1983). Imposing sanctions for misconduct protects the public by

---

client papers and documents, *see* Rule 955(a) and (b), within 30 days of the filing of the resignation and files proof of compliance, within 10 days thereafter. To be effective, the resignation must be accepted by the State Supreme Court upon such conditions as it deems appropriate. Rule 960(c). By submitting the resignation, the bar member agrees to "relinquish all right to practice law in the State of California and ... in the event that this resignation is accepted and I later file a petition for reinstatement, that the State Bar will consider in connection therewith all disciplinary matters and proceedings against me at the time this resignation is accepted, in addition to other appropriate matters." Any lawyer resigning also agrees "that [he or she] will be transferred to inactive membership of the State Bar." Rule 960(b).

demonstrating to members of the legal profession the type of conduct which will not be tolerated. *Hamby,* 322 Md. at 611, 589 A.2d at 56. It is also well settled, and this Court has consistently held, that, absent extenuating circumstances, misappropriation of funds by an attorney warrants disbarment. *Attorney Grievance Commission v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Grievance Commission v. Bakas,* 323 Md. 395, 404, 593 A.2d 1087, 1091 (1991); *Matter of Murray,* 316 Md. 303, 308, 558 A.2d 710, 712 (1989); *Attorney Grievance Commission v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988); *Attorney Grievance Commission v. Goldberg,* 307 Md. 546, 548, 515 A.2d 765, 766 (1986); *Attorney Grievance Commission v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986); *Attorney Grievance Commission v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 358 (1984); *Attorney Grievance Commission v. Molovinsky,* 300 Md. 291, 296, 477 A.2d 1181, 1184 (1984); *Attorney Grievance Commission v. Boehm,* 293 Md. 476, 481, 446 A.2d 52, 54 (1982).

The respondent's failure to respond to the petition and to the request for admission of facts and genuineness of documents resulted in his admission to making unauthorized loans from a trust fund, of which he was a co-trustee, to making unauthorized investments with client funds, obtaining a fee in the process, and to taking title to the property securing the loan of client funds, in his own name and without indicating in any way that title was being held in trust for the client. That conduct constitutes misappropriation of client funds. Accordingly, disbarment is the appropriate sanction.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT PURSUANT TO MARYLAND RULE BV15.c., FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE PETITIONER.