712 A.2d 525

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**T. Carlton RICHARDSON.**

**Misc. AG No. 25, Sept. Term, 1997.**

Court of Appeals of Maryland.

July 1, 1998.

Reconsideration Denied Aug. 31, 1998.

Melvin Hirshman, Bar Counsel, and Gail Kessler, Asst. Bar Counsel, for the Attorney Grievance Com'n of Maryland, for Petitioner.

T. Carlton Richardson, Washington, DC, Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland (the "Commission" or the "petitioner"), through Bar Counsel, filed a Petition for Disciplinary Action against T. Carlton Richardson, the respondent, alleging misconduct arising out of disciplinary proceedings in Florida. Specifically, the petition alleges, and the respondent acknowledges, that he has been the subject of two disciplinary proceedings in the Supreme Court of Florida, both of which resulted in his being suspended from the practice of law in that State for ninety-one and sixty days respectively. In the first proceeding, the Florida Supreme Court affirmed the referee's determination that the respondent had charged a clearly excessive attorney's fee, and it imposed a harsher sanction than was recommended. In the second, the court affirmed the determination that the respondent filed a manifestly frivolous and malicious lawsuit. The petition in the instant case also states, and again the respondent does not dispute, that the respondent was the subject of a reciprocal discipline proceeding, with respect to the first Florida proceeding, in the District of Columbia, resulting in the same term of suspension in the District of Columbia as was imposed in Florida.[1]

---

1. The Florida Supreme Court conditioned the respondent's reinstatement to the Florida bar on his proof of rehabilitation and payment of restitution and the costs of the disciplinary proceedings and ordered the respondent to serve a two-year probationary period. The District of Columbia Court of Appeals declined to impose the two-year probationary term or to condition reinstatement in that jurisdiction on the fulfillment of the financial aspect of the Florida sanction.

In this reciprocal discipline proceeding, the petitioner sought a determination by this Court that the respondent, by the acts found in the Florida proceedings, violated the following Rules of the Maryland Rules of Professional Conduct [2]: 1.5 (Fees); [3] 1.8 (Conflict of Interest: Prohibited Transac-

It is of significant concern to this Court that the Florida Supreme Court's first decision sanctioning the respondent was released April 19, 1990 and the second, October 31, 1991, yet the reciprocal discipline petition was not filed in this Court until June 10, 1997. This is to be contrasted with the proceedings in the District of Columbia, which were decided by its Court of Appeals by opinion filed January 17, 1992. Bar Counsel has responded to this Court's inquiries on the subject, he has not provided a satisfactory explanation for the difference in the time required for processing reciprocal discipline cases in these adjoining jurisdictions.

2. Pursuant to amendment occurring on June 5, 1996, effective January 1, 1997, the Maryland Rules of Professional Conduct are now set forth in Appendix: Rules of Professional Conduct of the Maryland Rules. *See* Maryland Rule 16–812.

3. Rule 1.5 provides:
   "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
   "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
   "(3) the fee customarily charged in the locality for similar legal services;
   "(4) the amount involved and the results obtained;
   "(5) the time limitations imposed by the client or by the circumstances;
   "(6) the nature and length of the professional relationship with the client;
   "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
   "(8) whether the fee is fixed or contingent.
   "(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

tions);[4] 3.1 (Meritorious Claims and Contentions);[5] and 8.4 (Misconduct).

We referred the matter to the Honorable Clayton Greene, Jr. of the Circuit Court for Anne Arundel County to make findings of fact and conclusions of law pursuant to Maryland Rule 16–711(a).[6] Following a hearing, at which testimony and exhibits were received, Judge Greene concluded that the respondent had not proven by a preponderance of the evidence that he did not engage in the misconduct as determined by the Supreme Court of Florida. After setting out as background the respondent's bar memberships[7] and reviewing briefly the Florida and District of Columbia disciplinary proceedings, the court made findings and drew conclusions, as follows:

4. As relevant, that rule provides:
"(a) A lawyer shall not enter into a business, financial or property transaction with a client unless:
"(1) the transaction is fair and equitable to the client; and
"(2) the client is advised to seek the advice of independent counsel in the transaction and is given a reasonable opportunity to do so.
"(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation."

5. Rule 3.1 states:
"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established."

6. Maryland Rule 16–711(a) provides: "A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."
In addition to the charges enumerated above, the respondent was charged with misrepresentation to the Immigration and Naturalization Service. Judge Greene dismissed that charge and the Commission has not excepted to that disposition of that charge.

7. The hearing court noted that the respondent was admitted to the Maryland and District of Columbia Bars in 1979. It also noted that the respondent "was a member of the Florida Bar, but resigned in 1992."
That the respondent has resigned from the Florida bar does not insulate him from reciprocal discipline in Maryland premised upon the Florida proceedings. *Attorney Grievance Comm'n of Maryland v. Hopp*, 330 Md. 177, 183–84, 623 A.2d 193, 195–96 (1993).

"Petitioner submitted two final judgments from the Supreme Court of Florida concerning the attorney grievance proceedings involving the Respondent. In these two final judgments, the Supreme Court of Florida found that Respondent engaged in professional misconduct. Pursuant to Rule 16–710,[8] Petitioner requested the Court accept the final judgment as conclusive proof of misconduct."

\* \* \* \*

"Respondent offered his own testimony in an attempt to mitigate. Respondent testified that he served a total of twenty months of suspension in the District of Columbia for his misconduct and that he acknowledged his unethical conduct. Respondent stated that he resigned from the Florida Bar but is now eligible for readmission. Respondent testified that since the incident in Florida which gave rise to these proceedings, he has attended an ethics course in billing, attended several continuing legal education courses, tried to improve his operations, become a sole practitioner, learned how to deal with client fee disputes, increased his sensitivity towards his clients and has learned from his mistakes.

"In response, Petitioner argued that Respondent has not altered his billing practices since his sanctioned conduct in Florida. In support of this, Petitioner submitted the Respondent's schedule of fees and costs from April 1, 1993. Petitioner argued that while respondent testified that the

---

**8.** As relevant, Rule 16–710 provides:

"e. Conviction of Crime—Adjudication of Misconduct.

"1. Proof of Guilt. In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime. A plea or verdict of guilty, or a plea of nolo contendere followed by a fine or sentence, is a conviction within the meaning of this Rule. A final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule."

schedule of the fees was a description of his new billing practices, Respondent also testified that he employed the same billing practice when dealing with the Joneses in Florida. Therefore, Petitioner argued, Respondent has not changed his billing practices.

"Respondent argued that this Court should not accept Florida's findings because Florida requires a different standard of proof for charges of excessive fees and frivolous lawsuits. Respondent also argued that Florida's proceedings should be rejected because he was denied substantive due process; there were irregularities in the Florida proceedings, and Petitioner did not prove the elements of the misconduct.

"The Court rejects Respondent's argument that the differing standards of proof warrant a rejection of Florida's final judgment. The Maryland Rules and appellate decisions of this state make no distinction between the final determinations by judicial tribunals in states requiring different standards of proof, and this Court only looks to see if the final adjudication in a disciplinary proceeding was made by a judicial tribunal. *Attorney Grievance Commission v. Miller*, 310 Md. 163 [528 A.2d 481] (1987).

"The Court finds that Florida's final judgments are conclusive proof of Respondent's misconduct. Petitioner submitted the Supreme Court of Florida's decisions of April 19, 1990 ... and October 31, 1991 ... and the Court finds this is clear and convincing evidence of final judgments by a judicial tribunal. See *Miller*, 310 Md. at 163 [528 A.2d at 481]. As Respondent's submitted evidence does [not] explain why the Florida decision should not be accepted, Respondent has not established any factual matters by a preponderance of the evidence. Therefore, the Court accepts the Supreme Court of Florida's final adjudication as conclusive proof of Respondent's misconduct and accepts the facts found by the Supreme Court of Florida.

"FINDINGS OF FACT

"I. *Excessive Fees*

"1.  On March 31, 1983, Respondent was retained by Mr. and Mrs. Roosevelt Jones to probate the estate of Leula King in Tampa, Florida.

"2.  The Joneses agreed to pay the Respondent a $500.00 origination fee and 10 per cent of the estate's gross value. The parties agreed that the origination fee would be applied towards the total fee.

"3.  Leula King had died approximately fifty years earlier and had no outstanding debts.  The estate was not complex and consisted of a piece of real property valued at approximately $22,000.00.

"4.  Between February 24, 1984 and July 5, 1985, Respondent prepared the necessary documents for probate and charged the Joneses $10,550.99.

"5.  A portion of the Joneses' legal fees represented a monthly cover charge which Respondent imposed on all his clients to offer his pro bono services.

"6.  Respondent charged the Joneses a minimum of twenty minutes per telephone call, even if there was no answer, and charged the Joneses forty five minutes per page for documents he prepared.

"7.  Respondent advised and assisted the Joneses to obtain a $13,000.00 loan from Community Federal Savings and Loan Association of Tampa.  A substantial portion of the loan was used to satisfy the Respondent's fees.

"8.  The Honorable Dennis Alvarez of the Hillsborough County Circuit Court, Probate Division, heard expert testimony and determined that $2,500.00 was a reasonable attorney fee in the probate case and that $150.29 was the amount of the costs.  On remand, Judge Alvarez determined that the Joneses had paid $10,550.99 for the King estate and ordered Respondent to reimburse $7,970.00 to the King estate.  Further, Judge Alvarez required Respondent to reimburse the King estate $6,500.00 for the expense the estate incurred in defending itself regarding the excessive attorney's fees before the Probate Court and the Second

District Court of Appeals and $1,000.00 for fees incurred in the two proceedings before the Supreme Court of Florida.

"9. The Joneses had also retained Respondent to prepare their wills.

"10. The Joneses combined income at the time was less than $14,000.00 and their gross estate was worth no more than $75,000.00.

"11. Respondent charged the Joneses $85.00 for the initial consultation, a $750.00 origination fee, and a minimum attorney's fee of $1,250.00. The Joneses paid Respondent $1,444.93 for his services to prepare the wills. Respondent also sent the Joneses an invoice for $1,273.97 for general services which included a finder's fee associated with assisting Mrs. Jones in obtaining the loan to pay his attorney's fees.

"12. Through expert testimony in Florida, it was determined that $2, 500.00 was a generous fee for the probate of the King estate, $400.00 was a generous fee for the work performed on the Joneses' wills and $200.00 or $300.00 was sufficient for the general services that Respondent performed.

## II. *Frivolous Claim*

"1. Respondent represented the personal representative of an estate in a probate proceeding in the Circuit of Florida. Judge Alvarez determined that attorney's fees charged by Respondent were excessive and ordered him to reimburse the estate.

"2. Respondent appealed Judge Alvarez's decision to the Second District Court of Appeal. Respondent argued that Judge Alvarez lacked jurisdiction to order the refund of excessive compensation because the payment had been rendered by the personal representative personally, rather than from the estate.

"3. The Second District Court of Appeal found Respondent's argument to be without merit, and remanded the matter to the Probate Court to correct the amount of the

reimbursement. Review by the Supreme Court of Florida was denied.

"4. After recalculation of the reimbursement by the Probate Court, Respondent attempted to file an appeal which was dismissed as being untimely filed.

"5. Respondent, on two occasions, filed writs of mandamus to the Supreme Court of Florida, seeking the Second District Court of Appeal to reinstate his second appeal, to vacate the latest judgment entered by Judge Alvarez and to compel the Probate Court to withdraw jurisdiction. The Supreme Court of Florida denied both petitions for writ of mandamus.

"6. Respondent then filed a complaint in the United States District Court for the District of Florida, alleging that the reimbursement order violated his civil rights because of a lack of jurisdiction.

"7. Respondent named the following defendants in the complaint: the personal representative and his wife, the attorneys who succeeded the Respondent in the probate matter, Judge Alvarez, the Judges of the Second District Court of Appeal and the Justices of the Supreme Court of Florida. Respondent sought $1,000,000.00 in damages as well as injunctive relief.

"8. The Federal Court granted the defendants' motion to dismiss and found that the complaint was manifestly frivolous and malicious. Further, the Court imposed sanctions under Rule 11 of the Federal Rules of Civil Procedure.

## "FINDINGS OF FACT

"Under Rule 1.5 of the Rules of Professional Conduct, it is professional misconduct to charge an unreasonable fee to clients. In determining the reasonableness of a fee, the Court is to consider the following factors: the time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other

employment by the lawyer, the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the service; and whether the fee is fixed or contingent. Rule 1.5. Additionally, Rule 1.5 requires the lawyer to communicate the basis or rate of the fee to the client, preferably in writing, before or within a reasonable time after commencing the representation if the lawyer has not regularly represented the client. Rule 1.5. Respondent's fee charged to the Joneses for legal services in probating the King estate and preparing the will in the previously mentioned facts was excessive. Therefore, Respondent has violated Rule 1.5 of the Rules of Professional Conduct.

"Under Rule 3.1 of the Rules of Professional Conduct, a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous. As described in the facts, Respondent's federal law suit against the Judges of the Second District Court of Appeal and the Justices of the Supreme Court of Florida, the attorneys who succeeded Respondent in the probate matter and the judge of the probate court was manifestly frivolous and malicious. The federal suit was filed by Respondent after Respondent's two appeals of the Probate Court's final judgment and two writs of mandamus were denied. Therefore, Respondent violated 3.1 of the Rules of Professional Conduct.

"Under Rule 8.4(d) of the Rules of Professional Conduct, it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. As described in the facts, Respondent's actions of filing a frivolous and malicious lawsuit against the Florida judges that ruled against him in previous actions prejudiced the administration of justice. Therefore, Respondent violated Rule 8.4(d) of the Rules of Professional Conduct.

"Petitioner had initially alleged Respondent violated Rule 1.8 of the Rules of Professional Conduct, but [later] aban-

don[ed] his argument. Therefore, the Court finds the Respondent did not violate Rule 1.8 of the Rules of Professional Conduct."

The petitioner took no exceptions to the findings and conclusions of the hearing court. It recommends that the respondent be indefinitely suspended from the practice of law with the right to re-apply for admission upon his readmission to the Florida and the District of Columbia bars. The petitioner reasons that, because, on the facts found by the Supreme Court of Florida and set out in the findings of the hearing court, both Florida and the District of Columbia saw fit to impose a term of suspension, "Respondent's readmission under conditions satisfactory to those jurisdictions, if any, would serve to protect the public adequately. . . ." The petitioner also urges that the order of suspension require the respondent to disclose his clients, and the matters currently pending, to Bar Counsel, and, within fifteen days of its filing, a copy of the letter notifying clients, opposing counsel and any unrepresented party, of his suspension.

On the other hand, the respondent filed ten (10) exceptions.[9] Grouping similar ones together, they may be summarized as follows: 1) to the admission into evidence of the Florida and the District of Columbia disciplinary judgments, on the grounds that they are not entitled to full faith and credit because the reciprocal discipline judgment, like the Florida judgments "were rendered in violation of respondent's due process rights (14th Amendment)" and, in addition, the Flori-

---

9. Prior to the hearing, the respondent filed three motions to dismiss: Respondent's First Motion to Dismiss Prohibited Transaction and Prejudicial Conduct Charges: and to Bifurcate Proceedings; Respondent's Second Motion to Dismiss Unreasonable Fee Charge (Including Request for Hearing); and Respondent's Third Motion to Dismiss Baseless Lawsuit Charge (Including Hearing Request). The hearing court denied the motions, citing *Attorney Griev. Commission v. Harris,* 310 Md. 197, 200, 528 A.2d 895, 896 (1987), noting that it is this Court that must determine the sufficiency of the grounds alleged for dismissal. Those motions having now been read and considered by this Court, they are hereby denied.

da judgments were rendered in violation of the double jeopardy prohibition (5th Amendment) of the U.S. Constitution; 2) to the hearing court's denial of his motion for judgment at the close of the petitioner's case and its rulings excluding evidence offered to impeach the Florida judgments. The respondent contends that the former ruling was erroneous because Florida was not required to prove the misconduct by clear and convincing evidence, the Maryland standard, and the latter rulings were erroneously based on the collateral effect of the Florida judgments; 3) to the hearing court's refusal to apply the Maryland Uniform Enforcement of Foreign Judgments Act to the Florida disciplinary judgment and instead concluding that the respondent's attempts to impeach those judgments "are merely attempts . . . to relitigate issues already decided by Florida tribunals;" 4) to the hearing court's characterization of the federal law suit the respondent filed as "malicious," in addition to "frivolous," alleging that the latter is the only term the Florida referee used; 5) to the hearing court's conclusion that the filing of the federal law suit, naming the Florida judges as defendants, which was later determined by the federal court to be baseless, is conduct prejudicial to the administration of justice; 6) to the hearing court's refusal to rule on the respondent's discovery motions to determine the sufficiency of the petitioner's denials to requests for admissions; and 7) to the hearing court's denial of the respondent's motion to quash service of process, on the grounds that the respondent, a D.C. resident, was immune from such service while attending a hearing before the Review Board of the Attorney Grievance Commission of Maryland. None of the exceptions has merit.

█ This case is a reciprocal discipline case. In such cases, "[a] final adjudication in a disciplinary proceeding by a judicial tribunal . . . that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule." Rule 16–710(e). *See Attorney Griev. Comm'n v. Gittens*, 346 Md. 316, 324, 697 A.2d 83, 87 (1997); *Attorney Griev. Comm'n v. Willcher*, 340 Md. 217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Saul*, 337

Md. 258, 267–68, 653 A.2d 430, 434 (1995); *Attorney Griev. Comm'n v. Hopp,* 330 Md. 177, 185–86, 623 A.2d 193, 197 (1993); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425–26, 550 A.2d 1150, 1152 (1987); *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142–43, 527 A.2d 325, 330 (1987); *Attorney Griev. Comm'n v. Haupt,* 306 Md. 612, 614–15, 510 A.2d 590, 591–92 (1986); *Attorney Griev. Comm'n v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986); *Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984); *Attorney Griev. Comm'n v. Rosen,* 301 Md. 37, 39, 481 A.2d 799, 800 (1984). Thus, evidence that the respondent was found, by the Supreme Court of Florida, to have engaged in misconduct and that that finding was used in the District of Columbia to adjudicate reciprocal discipline proceedings against him, is not only admissible in this Court, but such evidence conclusively establishes that he engaged in that misconduct. As we have seen, the respondent was suspended on two occasions pursuant to an order of the Supreme Court of Florida and the District of Columbia Court of Appeals did likewise. The orders of the Florida and District of Columbia courts were issued only after disciplinary proceedings had been initiated and a hearing had been held to adjudicate the charges referred. Thus, the orders suspending the respondent conclusively establish that the respondent engaged in misconduct, they being final adjudications by a judicial tribunal in a disciplinary proceeding. *Gittens,* 346 Md. at 325, 697 A.2d at 88; *Willcher,* 340 Md. at 221–222, 665 A.2d at 1061; *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1987). *See also Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 482 A.2d 497 (1984). So too is the fact of the suspensions imposed by the Florida Supreme Court and the District of Columbia Court of Appeals, they too being final adjudications in a disciplinary proceeding.

We recently addressed the admissibility of the factual findings of a judicial tribunal that used a different and lower standard of proof of such conduct.[10] In *Attorney Griev.*

---

**10.** As we pointed out in *Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 81–82 n. 14, 710 A.2d 926, 933 n. 14 (1998), *Attorney Griev. Comm'n v. Miller,* 310 Md. 163, 528 A.2d 481 (1987) did not decide the issue.

*Comm'n v. Sabghir,* 350 Md. 67, 79–80, 710 A.2d 926, 932 (1998), a reciprocal discipline case arising out of disciplinary proceedings in New York, this Court concluded that the fact that New York's standard of proof of attorney misconduct is lower than that required in Maryland did not cause this Court to reject the factual findings made by the New York court. *Id.* at 82–83, 710 A.2d at 933–34. We also stated:

> "Moreover, given its rationale,[11] that New York applies a lower standard of proof in attorney discipline cases does not mean, and certainly there is no evidence, that New York treats attorney discipline matters "less seriously or wholly inconsistently with the manner exercised by this Court." *Gittens,* 346 Md. at 327, 697 A.2d at 88. Indeed, the opposite appears to be the case. Consequently, like the District of Columbia Court of Appeals, we see no problem accepting New York's lower standard of proof in reciprocal discipline cases."

*Id.* at 82, 710 A.2d at 934.

█ Rule 16–710(e)(2) addresses the situation when the petitioner seeks to avoid the imposition of a sanction in the receiving State through the proof of mitigating evidence. *Sabghir,* 350 Md. at 79–80, 710 A.2d at 932. It provides:

> "Additional evidence.–The introduction of evidence in a proceeding pursuant to this Rule of an attorney's conviction of

---

11.  The New York standard is premised on the rationale that "clear and convincing evidence" is only required in cases involving "the denial of personal or liberty rights," *Matter of Capoccia,* 59 N.Y.2d 549, 466 N.Y.S.2d 268, 453 N.E.2d 497, 499 (1983), and that, in New York, "the privilege of practicing law, once extended, is not a liberty interest or a personal right 'as to which the higher standard of proof has not been required.' " *Id.* This Court also has not characterized the practice of law as a personal or liberty right; however, it has recognized that the privilege of practicing law is a valuable one and that the requirements of procedural due process must be met before a State can exclude a person from practicing law. *Attorney Griev. Comm'n v. Reamer,* 281 Md. 323, 330, 379 A.2d 171, 176 (1977). But it has also noted that there is no vested right in an individual to practice law and that the State is free to bestow the privilege upon such conditions governing its exercise as will be consistent with the privilege's nature and purpose. *Id.* at 331, 379 A.2d at 176. *See also Fellner v. Bar Ass'n,* 213 Md. 243, 131 A.2d 729 (1957).

a crime in a judicial tribunal or adjudication of misconduct by a judicial tribunal, does not preclude the Commission from introducing additional evidence nor does it preclude the attorney from introducing evidence or otherwise showing cause why he should not be disciplined."

We have made clear that this provision does not permit the relitigation of the facts underlying the disciplinary judgment. *Sabghir*, 350 Md. at 80–81, 710 A.2d at 932–33. The respondent admits to wanting to impeach the Florida judgment. The hearing court correctly declined to permit him to do so; the respondent may not revisit, or collaterally attack, either the findings of fact made by the Florida court or the judgments it rendered.

The respondent is simply wrong when he asserts that the hearing court mischaracterized the respondent's filing of the federal law suit as "malicious," when neither the referee nor the federal judge so characterized it. In fact the federal court, as reflected in the referee's report, in the very place in the record to which our attention was directed, both granted the defendants' motions to dismiss and found that "the complaint is both manifestly frivolous and malicious."

The respondent argues that to be conduct that is prejudicial to the administration of justice, the act must be one that hinders or otherwise interferes with a judicial proceeding of which he is a party or represents a party. This Court has never so narrowly defined Rule 8.4(d). We have instead recognized that conduct that impacts on the image or the perception of the courts or the legal profession, *see Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 536, 565 A.2d 660, 666 (1989) and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice. Lawyers are officers of the court and their conduct must be assessed in that light. If a lawyer who commits an act of dishonesty, fraud or deceit, thus causes the public to lose confidence in the integrity of those officers and the judicial system as a whole, *see Maryland State Bar Ass'n, Inc. v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974), certainly one who flouts a decision of the highest court of the State in

which he is admitted to practice, without justification and in violation of his ethical obligations, does likewise and engenders the same loss of confidence. Indeed, conduct of the type that the respondent engaged in breeds, inevitably and inexorably, disrespect for the legal system. We have not the smallest doubt that the filing of appeals, maliciously, and with no justification will amount to conduct prejudicial to the proper administration of justice whenever and however it may be defined or whoever does the defining. *See In re Diener*, 268 Md. 659, 671, 304 A.2d 587, 594–95(1973).

It may be that, as the respondent alleges, the hearing court failed to rule on the respondent's discovery motions pertaining to the respondent's requests for admissions and his supplemental motion to compel production of certain documents in the petitioner's files. Nevertheless, there does not appear to be any prejudice alleged and certainly none has been shown as the result of those omissions. Indeed, this default is not included among the questions the respondent posed from the exceptions noted. Accordingly, this exception too will be overruled.

Rule 16–710(d) provides:

"Hearings—Conducted as Civil Cases. The hearing of charges is governed by the same rules of law, evidence and procedure as are applicable to the trial of civil proceedings in equity. Factual findings shall be supported by clear and convincing evidence."

Proceeding from the premise that, because the hearing of disciplinary charges is governed by the same rules of law, evidence and procedure applicable to civil trials, the respondent insists, citing *J. & H. Stables, Inc. v. Robinson*, 221 Md. 365, 157 A.2d 451 (1960) and a number of other, older Maryland cases, "the common law of Maryland based upon sound public policy in aid of the due administration of justice that during such time as a nonresident is in Maryland for the purpose of testifying as a witness or for prosecuting or defending an action the nonresident is not subject to service of process" applies. Not one of the cases the respondent cites is

an attorney discipline matter. A different rule applies in those cases.

Rule 8.5(a) makes clear that "[a] lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for a violation of these rules in this or any other jurisdiction." Rule 16–709 governs charges and, section (d) of that Rule, their service on the attorney charged. The latter provides that "[t]he Court of Appeals shall direct in each case the manner of service of a copy of the charges which shall be served together with the order of the Court of Appeals designating the court and judge or judges to hear the charges." Rule 16–709(d).

Further indication that the special status of an attorney admitted to practice in the courts of this State subjects that attorney to a different rule than that relied on by the respondent is found in Rules 16–704(c)(1), "Subpoenas," [12] and 16–709(d), "Certified Letter in Lieu of Subpoena." [13] Accordingly, there is no merit in the respondent's contention that he was not properly served.

---

12. That Rule provides:
   "(1) Issuance and Notice. After a complaint has been filed, and with the prior written approval of the Chair or Acting Chair of the Commission, Bar Counsel may issue a subpoena to compel the production of designated documents or other tangible things at a time and place specified in the subpoena. In addition to giving any notice required by law, Bar Counsel shall provide prompt notice of the issuance of the subpoena to the attorney against whom the complaint has been filed. The notice shall be personally delivered or sent by regular mail to the attorney's last known address and to the attorney's address contained in the records of the Clients' Security Trust Fund, if different."

13. That Rule provides:
   "If in a proceeding before an Inquiry Panel the attendance and testimony of or the production of books, documents, or other records by any attorney is required, the Panel may command the attendance and testimony of or production by that attorney by sending a letter by certified mail to the attorney. If the attorney is admitted to practice law in this State or the letter is delivered to the attorney within this State, the letter shall be as effective against the attorney as if a subpoena had been issued pursuant to paragraph (c) of this subsection."

The respondent's exceptions having been overruled, it remains to be determined what sanction is appropriate. We observed in *Sabghir,* 350 Md. at 83–84, 710 A.2d at 934, as to the sanction in reciprocal discipline cases:

"This Court has often imposed sanctions, in reciprocal discipline cases, of facially equal severity to those imposed by a sister state, *see, e.g., Bettis,* 305 Md. 452, 505 A.2d 492; *Moore,* 301 Md. 169, 482 A.2d 497; *Attorney Griev. Comm'n v. James,* 300 Md. 297, 305–06, 477 A.2d 1185, 1189 (1984); *Attorney Griev. Comm'n v. Hines,* 304 Md. 625, 500 A.2d 646 (1985); *Rosen,* 301 Md. 37, 481 A.2d 799. Nevertheless, there is no requirement that this should be done; we need not impose the same sanction as that imposed by the other jurisdiction. In fact, this Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission. *Gittens,* 346 Md. at 326, 697 A.2d at 88. Indeed, we have stated the rule in reciprocal discipline cases to be:

" 'When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct.'

"*Willcher,* 340 Md. at 222, 665 A.2d at 1061 (1995) (quoting *Parsons,* 310 Md. at 142, 527 A.2d at 330). Because one of the factors to be considered is the disciplinary determination of the jurisdiction where the misconduct occurred, we have deferred to the action taken by that jurisdiction where the purpose of attorney discipline is the same in both jurisdictions. *Gittens,* 346 Md. at 327, 697 A.2d at 88. In any event, the burden is on the respondent to demonstrate that less severe discipline than imposed in the other jurisdiction, or no discipline, should be imposed in this State. *People v. Calder,* 897 P.2d 831, 832 (Colo.1995); *The Florida Bar v. Friedman,* 646 So.2d 188, 190 (Fla.1994). In Maryland, that burden is "preponderance of the evidence." *Pow-*

*ell,* 328 Md. at 288, 614 A.2d at 109. *Attorney Griev. Comm'n v. Bakas,* 322 Md. 603, 605, 589 A.2d 52, 53 (1991)."

■ In this case, the respondent has not demonstrated by the requisite standard that no discipline should be imposed in this jurisdiction or that less discipline is appropriate. Focusing on the protection of the public, as we must, we believe that can and will be accomplished if the respondent were ordered indefinitely suspended from the practice of law.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c). FOR WHICH SUM, JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST T. CARLTON RICHARDSON.