514 A.2d 1212

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Virginia Sally DRAPER.

**Misc. Docket (Subtitle BV) No. 34, Sept. Term, 1985.**

Court of Appeals of Maryland.

Sept. 30, 1986.

Melvin Hirshman, Bar Counsel, and Walter D. Murphy, Jr., Asst. Bar Counsel, of the Atty. Grievance Com'n, for petitioner.

No appearance on behalf of the respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

Because we conclude that respondent, Virginia Sally Draper, is "incompetent" within the meaning of Md.Rule BV1 h, we shall place her on inactive status.[1]  Rule BV11 b 4 (iv).

---

1.  Rule BV1 h provides: " 'Incompetent' means unable to render adequate legal service by reason of mental or physical illness or infirmity, or addiction to or dependence upon an intoxicant or drug."

The Attorney Grievance Commission, acting pursuant to Rule BV9, filed a petition seeking disciplinary action against Draper, a member of the Maryland Bar since 7 December 1976. The petition charged violation of Disciplinary Rules 1–102(A)(1), (5), and (6); 2–110(B)(3); and 6–101(A)(3).[2] It also alleged that Draper "was incompetent as defined by" Rule BV1 h.

We referred the matter to Judge William R. Buchanan. Draper did not respond to the petition, nor did she attend the hearing Judge Buchanan held after an order of default had been entered against her. Judge Buchanan found that Draper had undertaken to represent Eleanor N. Hunt in a divorce case, but that Draper "suspended preparation of the case and ceased all contact with Mrs. Hunt" after a preliminary settlement had been worked out. As a consequence, "Mrs. Hunt [was] forced to proceed pro se on all subsequent matters, including the hearing on the merits of her divorce." He further found that Draper had undertaken to represent Silvia Moody in a wrongful discharge case. Once again, after "negotiating a settlement between Ms. ...

---

**2.** These Disciplinary Rules state, in pertinent part:
"DR 1–102 Misconduct.
"(A) A lawyer shall not:
　　(1) Violate a Disciplinary Rule.
　　　　*　*　*　*　*　*
　　(5) Engage in conduct that is prejudicial to the administration of justice.
　　(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
"DR 2–110 Withdrawal from Employment.
　　　　*　*　*　*　*　*
"(B) Mandatory withdrawal.
　　　A lawyer representing a client ... shall withdraw from employment, if:
　　　　*　*　*　*　*　*
　　(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively."
"DR 6–101 Failing to Act Competently.
"(A) A lawyer shall not:
　　　　*　*　*　*　*　*
　　(3) Neglect a legal matter entrusted to him."

Moody and her former employer," Draper "failed to follow up on the terms of the settlement...."

Judge Buchanan concluded that Draper had violated DRs 1-102(A)(1), (5), and (6); and 6-101(A)(3). He recognized that an Attorney Grievance Commission inquiry panel, after a 1985 hearing, had found that Draper suffered from "a serious mental disorder." Nevertheless, he could not "determine with any degree of certainty ... whether ... Ms. Draper was experiencing such disorders during the Hunt and Moody cases in 1983, so as to have warranted her mandatory withdrawal from those two cases." Therefore, he found no violation of DR 2-110(B)(3).

Draper does not except to any part of Judge Buchanan's report. The Commission notes three exceptions.

■ First, the Commission excepts to Judge Buchanan's failure to set forth as findings of fact certain matters deemed admitted because of Draper's failure to respond to requests for admissions of fact and genuineness of documents filed by the Commission. It appears that Judge Buchanan treated all of those matters as established. He said he "must deem all allegations made by [the Commission] in its Request for Admissions of Facts and Genuiness [sic ] of Documents as admitted pursuant to Maryland Rule 2-424." He did not, however, recite those facts in his report, nor did he incorporate them in it by reference. We believe the better practice requires him to do one or the other, and we sustain this first exception.

Next, the Commission excepts to Judge Buchanan's failure to find Draper in violation of DR 2-110(B)(3). A finding of violation of DR 2-110(B)(3) would require evidence that when Draper was handling the Hunt and Moody matters she was suffering from a "mental ... condition" that rendered it "unreasonably difficult for [her] to carry out the employment effectively." The only evidence on that point

was testimony of A. Dwight Pettit, Esq., before the inquiry panel.[3]

■ Pettit, with whom Draper was associated at the critical times, opined that Draper had been "ill" and "depressed." There was little evidence of the precise nature of the illness or its symptomology. Nor was there persuasive testimony tending to establish a causal link between Draper's illness (whatever it may have been) and her handling of the Hunt and Moody cases. *See Attorney Grievance Comm. v. Aler,* 301 Md. 389, 483 A.2d 56 (1984), and *Attorney Grievance Comm. v. Truette,* 299 Md. 435, 474 A.2d 211 (1984) (causal connection between mental condition and particular conduct established). Factual findings in an attorney disciplinary hearing held pursuant to Rule BV10 must be supported by clear and convincing evidence. Rule BV10 d. The factual findings of the hearing judge are prima facie correct and will not be disturbed on review unless clearly erroneous. *Attorney Grievance Comm. v. Myers,* 302 Md. 571, 490 A.2d 231 (1985). On this state of the record, we cannot say that Judge Buchanan was clearly erroneous in concluding, in effect, that there was no clear and convincing evidence of a violation of DR 2–110(B)(3). The Commission's second exception is overruled.

Finally, the Commission excepts because Judge Buchanan failed to find Draper was "incompetent" because she was "unable to render adequate legal service by reason of mental ... illness or infirmity...." [4] The focus of inquiry here is not on whether a lawyer should withdraw from representation because a particular condition "renders it unreasonably difficult for [her] to carry out" a particular employment effectively. Rather, it is on whether the lawyer's condition is such as to preclude in a general sense the rendition of adequate legal service.

---

**3.** The entire record of panel proceedings was introduced at the hearing before Judge Buchanan.

**4.** Rule BV1 h also refers to "physical illness" and to "addiction to or dependence upon an intoxicant or drug." The record contains no indication of the presence of any of those conditions.

While the information before Judge Buchanan did not compel a finding of an incapacitating mental condition in 1983, it did contain substantial evidence of the existence of that sort of problem in 1985, when Draper appeared before the inquiry panel. She told the panel, among other things, that she was 21 years old (at other times she thought she was 40); that she had graduated from law school at Cambridge University, England, at age 14; that she had graduated from college at age 14; that she had never attended Howard University Law School (although she had); and that she had worked for the U.S. Attorney's Office for three months or perhaps three years. At another point she explained that she did not know when she graduated from law school in England because "Our records were burned up in Washington." She said there were no records of her entering the United States because she was kidnapped from overseas, drugged, assaulted and battered. When asked how long she had been in Maryland, she responded,

"I have been in the State of Maryland approximately less than two years.... Yes, there is someone else who uses my name. She was at the school called Howard. I have her fingerprints. It's a big joke, but, uh, I'm not interested in your college students or the medical system. Now, I did acquire it. If you want my license, you can have it."

■ Her testimony in many other respects was marked by confusion and by bizarre statements indicating a lack of contact with reality. Taken as a whole, we believe that the record contains clear and convincing evidence that Draper at the time of the hearing was "unable to render adequate legal service by reason of mental ... illness or infirmity" and thus "incompetent" within the meaning of Rule BV1 h. The inquiry panel so found and Draper failed to produce any evidence before Judge Buchanan to refute this finding. The Commission's third exception is sustained.

■ Since we have concluded that Draper is incompetent, as that term is defined in Rule BV1 h, we must now decide how to dispose of this matter in order to protect the public.

The purpose of a disciplinary proceeding is to protect the public, rather than to punish the errant attorney. *Attorney Grievance Comm. v. Kahn,* 290 Md. 654, 431 A.2d 1336 (1981). The Commission recommends that Draper be placed on inactive status. We agree. When an attorney is incapacitated to the extent she is unable to engage in the practice of law, it is appropriate to place her on inactive status. *See Attorney Grievance Comm. v. Demyan,* 299 Md. 652, 474 A.2d 1342 (1984); *Attorney Grievance Comm. v. Harrison,* 292 Md. 81, 437 A.2d 228 (1981). This action will remove Draper from the practice of law until such time as she can demonstrate her fitness to return to her profession.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c. FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VIRGINIA SALLY DRAPER.