*Attorney Grievance Commission v. Nikolaos Panagiotis Kourtesis*
Misc. Docket AG No. 4, September Term, 2013


**ATTORNEY GRIEVANCE – RECIPROCAL ACTION – INCAPACITATION – INACTIVE STATUS:** An attorney, admitted in Maryland and the District of Columbia (D.C.), claimed in a foreign jurisdiction to be suffering from a mental illness that rendered him unable to defend himself in a pending disciplinary matter in the District of Columbia. D.C. ordered that the attorney be placed on indefinite suspension due to his self-professed disability and additionally that the pending disciplinary matter be held in abeyance until further order by the D.C. Court of Appeals. In a reciprocal action in Maryland, placing the attorney on inactive status until further order by this Court is the most appropriate analogous response, at this time.


**ATTORNEY GRIEVANCE – RECIPROCAL ACTION – EXCEPTIONAL CIRCUMSTANCES EXCEPTION – REASONS FOR SANCTION IN THE DISTRICT OF COLUMBIA STILL EXIST:** In light of the pending disciplinary proceedings held in abeyance indefinitely in the District of Columbia, which was part of the sanction in that jurisdiction, the exceptional circumstances exception under Md. Rule 16-774(e)(5), which applies in cases where the reason for inactive status in the original jurisdiction no longer exists, does not apply here. Thus, a separate hearing to determine competency and fitness to practice law in Maryland is inappropriate at this time.

**ATTORNEY GRIEVANCE – RECIPROCAL ACTION – EXCEPTIONAL CIRCUMSTANCES EXCEPTIONS – GRAVE INJUSTICE:** Moreover, neither financial difficulties to Respondent due to the inability to practice law while on inactive status nor "forum-shopping" for the quickest reinstatement creates a "grave injustice" warranting a finding that this reciprocal action is inappropriate under Rule 16-774(e)(3).

Argued: December 5, 2013

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG No. 4

September Term, 2013

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

NIKOLAOS PANAGIOTIS KOURTESIS

Barbera, C.J.,
Harrell,
Greene,
Adkins,
McDonald,
Watts,
Rodowsky, Lawrence F. (Retired,
          Specially Assigned),

    JJ.

Opinion by Harrell, J.

Filed: March 24, 2014

This reciprocal disciplinary action involves Nikolaos Panagiotis Kourtesis, who was admitted to the Bar of this Court on 17 December 1997 and to the Bar of the District of Columbia on 14 November 2005. On 14 February 2013, the District of Columbia Court of Appeals suspended indefinitely Kourtesis from the practice of law in the District of Columbia, and ordered further that pending disciplinary charges filed against him in the District be held in abeyance due to his self-professed disability preventing him from defending himself (or assisting his counsel in the defense) against the charges. On 10 March 2013, the Attorney Grievance Commission of Maryland, through Bar Counsel, filed, pursuant to Maryland Rules 16-751 and 16-773, a Petition for Disciplinary or Remedial Action, attaching to the Petition a certified copy of the 14 February 2013 Order of the District of Columbia Court of Appeals.

On 20 March 2013, we issued a Show Cause Order. Bar Counsel responded on 17 May 2013, asking that reciprocal sanction (indefinite suspension) be imposed against Kourtesis in this State. In response, Kourtesis urged us to refer the matter to a judge of the Circuit Court for Montgomery County (where Respondent maintains an office for the practice of law) for an evidentiary hearing prior to acting on the request by Bar Counsel for his indefinite suspension. We hold that a separate hearing to determine his fitness to practice law in this State is inappropriate at present. Rather, we order that Kourtesis be placed on inactive status, the most analogous remedy in this State, until further order by this Court.

## I. UNDISPUTED FACTS

### A. Proceedings in the District of Columbia

On 25 May and 12 July 2012, counsel for the Board on Professional Responsibility filed "Specifications of Charges" against Kourtesis in the District of Columbia based on allegations arising from his representation of certain clients in personal injury matters.[1] On 7 August 2012, Kourtesis filed his Answer. Prior to a merits adjudication of these charges, Kourtesis petitioned in December of 2012 for his suspension and the abeyance of the pending disciplinary charges due to his disability, pursuant to a special procedure in the District of Columbia. D.C. Bar Rule XI, § 13(e), which governs this procedure, provides:

> If, in the course of a disciplinary proceeding, the attorney claims to be suffering from a disability because of mental or physical illness or infirmity, or because of addiction to drugs or intoxicants, which makes it impossible for the attorney to present an adequate defense, the Court shall enter an order immediately suspending the attorney from the practice of law until a determination is made of the attorney's capacity to practice law in a proceeding under subsection (c) of this section.

As grounds for his motion, Kourtesis asserted that he suffered from depression, making it impossible (indefinitely) to defend himself in the disciplinary matters or to assist his counsel in the defense against the charges. Pursuant to D.C. Board Rule 15.3(a)(iii),[2]

---

[1] The record does not contain copies of either the Specifications of Charges or Answers. Thus, we proceed with knowledge of the existence of pending disciplinary proceedings in the District of Columbia, but without knowledge of any specifics.

[2] D.C. Board Rule 15.3(a)(iii) requires that any motion related to disability matters include "affidavits, medical reports, official records, or other documents setting forth or establishing any of the material facts on which the movant is relying."

-2-

Kourtesis included, in support of his assertion, letters from Walker Lyerly, M.D., who diagnosed Kourtesis as having a Major Depressive Disorder, and Dan Schwarz, Psy.D. (a licensed clinical psychologist), who diagnosed Kourtesis with Major Depression, Recurrent, Moderate. Both letters asserted that Kourtesis's depression rendered him unable to assist his counsel in defending himself in the disciplinary proceedings in the District of Columbia. Additionally, Kourtesis filed a signed "Acknowledgement of Disability," dated 12 December 2012, in which he acknowledged that "during the period of 'March, 2010 – Present,' I suffered from a disability . . . by reason of 'depression.'"[3]

On 31 December 2012, the Board on Professional Responsibility, acting through its Chair and under D.C. Bar Rule XI, § 13(c),[4] petitioned the District of Columbia Court

---

[3] In full, the "Acknowledgement of Disability" provided:

I, Nikolaos Kourtesis, hereby acknowledge that during the period of March, 2010 – Present, I suffered from a disability (or addiction) by reason of depression. In this disciplinary proceeding against me, I am contending that the alleged violations of the Code of Processional Responsibility would not have occurred but for such disability (or addiction), and I am requesting mitigation of sanctions based on such disability (or addiction). I understand, and hereby stipulate, that this acknowledgement may be used by the Board on Professional Responsibility, if appropriate under the provisions and limitations of Board rule 11.12, in seeking from the District of Columbia Court of Appeals an order imposing probationary conditions or suspensions from the practice of law pursuant to Section 13(e) of Rule XI of the Rules Governing the Bar.

[4] D.C. Bar Rule XI, § 13 (c) provides, in relevant part:

If the Board has reason to believe that an attorney is incapacitated from continuing to practice law because of mental infirmity or illness or because of addiction to drugs or intoxicants, the Board may petition the Court to determine whether the attorney is so incapacitated. Upon the filing of the

(continued…)

-3-

of Appeals "to immediately suspend" Kourtesis, pursuant to D.C. Bar Rule XI, § 13(e), on the grounds of his "motion for suspension and abeyance of disciplinary matters due to disability, and supporting documentation, filed with the Board pursuant to D.C. Bar R. XI, §§ 13(c) and (e) and Board Rule 15.3." In this petition, the Board on Professional Responsibility stated that it did not oppose Kourtesis's motion, but noted additionally:

> Bar Counsel's response asserts that it "lacks knowledge" of how [Kourtesis]'s alleged disability affects his ability to defend himself, but it "admits that [Kourtesis] has provided medical support for this claim." Bar Counsel also notes that [Kourtesis]'s counsel has confirmed that [Kourtesis] appears not to be able to assist counsel with his defense of these disciplinary matters.

Upon consideration of the Board on Professional Responsibility's petition, the District of Columbia Court of Appeals ordered, on 14 February 2013:

> [Kourtesis] is indefinitely suspended from the practice of law in the District of Columbia, effective immediately, and that any pending matters be held in abeyance pursuant to D.C. Bar Rule XI, § 13 (e) until further order of the court pursuant to D.C. Bar Rule XI, § 13 (c).

---

(…continued)

> Board's petition, the Court may take or direct such action as it deems appropriate, including the examination of the attorney by such qualified medical expert or experts as it shall designate. If the Court concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order suspending the attorney on the ground of such disability for an indefinite period, effective immediately and until further order of the Court, and any pending disciplinary proceeding against the attorney shall be held in abeyance.

The Order provided further that his "reinstatement to the District of Columbia Bar shall be in accordance with the provisions of D.C. Bar Rule XI, § 13 (g) . . . ." Subsection (g) provides:

> Reinstatement of Incapacitated Attorney. An attorney suspended under this section may apply for reinstatement once a year, or at such shorter intervals as the Court may direct in its order of suspension or any modification thereof. Upon the filing of such application, the Court may take or direct such action as it deems appropriate, including the examination of the attorney by such qualified medical experts as the Court shall designate. In its discretion, the Court may direct that the expense of such an examination shall be paid by the attorney, and that evidence be presented establishing proof of the attorney's competence and learning in the law, which may include certification by the bar examiners of the attorney's successful completion of an examination for admission to practice. **An application for reinstatement under this subsection shall be granted by the Court upon a showing by the attorney, by clear and convincing evidence, that the disability has ended and that the attorney is fit to resume the practice of law.**

D.C. Bar Rule XI, § 13(g) (emphasis added). *See also* D.C. Bar Rule XI, § 16(b) ("Reinstatement of attorneys suspended for disability. An attorney who has been suspended indefinitely because of disability under section 13 of this rule may move for reinstatement in accordance with that section, but reinstatement shall not be ordered except on a showing by clear and convincing evidence that the disability has ended and that the attorney is fit to resume the practice of law.").

At the 5 December 2013 show cause hearing in the reciprocal proceedings initiated in Maryland, Kourtesis's counsel reported that Kourtesis had not filed for reinstatement in the District of Columbia, but planned on seeking reinstatement at some non-specific time in the future.

## B. Reciprocal Proceedings in Maryland

On 10 March 2013, the Attorney Grievance Commission of Maryland ("Bar Counsel") filed, pursuant to Maryland Rules 16-751 and 16-773, a Petition for Disciplinary or Remedial Action, attaching a certified copy of the 14 February 2013 Order by the District of Columbia Court of Appeals. We issued a Show Cause Order. On 17 May 2013, Bar Counsel responded, asking that a reciprocal sanction (indefinite suspension) be imposed.[5]

In his Verified Response to Show Cause Order, Kourtesis argued that no reciprocal action should be imposed upon him in Maryland because exceptional circumstances exist under Rule 16-773(e)(3) and (5). These subsections provide:

> (e) Exceptional circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
> . . .
> (3) the imposition of corresponding discipline would result in grave injustice [or]
> . . .
> (5) the reason for inactive status no longer exists.

Kourtesis argues first that the circumstances which led to his submitting voluntarily to indefinite suspension of his license to practice in the District of Columbia "were all related to a perfect storm of emotional issues in which he was ensnared."[6] According to

---

[5] At oral argument, Bar Counsel conceded that placing Kourtesis on "inactive status" would be an appropriate reciprocal action also.

[6] These "emotional issues" included serving involuntarily as a witness against his father-in-law in his father-in-law's disciplinary action in 2009; being fired subsequently by his father-in-law; experiencing marital difficulties which led to an upcoming

(continued…)

Kourtesis's counsel at oral argument, the perfect storm has passed now and, thus, the reason for his suspension no longer exists. Because the exceptional circumstances exception of Rule 16-773(e)(5) applies assertedly, Kourtesis requests that this Court refer the matter to a judge of the Circuit Court for Montgomery County (a jurisdiction in which he maintains an office) for an evidentiary hearing prior to acting on the request by Bar Counsel for his suspension. Kourtesis averred additionally that the exceptional circumstances exception of Rule 16-773(e)(3) ("grave injustice") applies.

On 5 December 2013, this Court held a hearing to consider the petition, show cause responses, and argument of counsel.

## II.    DISCUSSION

Maryland Rule 16-773 governs "reciprocal" attorney grievance cases. "Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16-751(a)(2)." Md. Rule 16-773(b). The Court issues a show cause order pursuant to subsection (c). After the parties respond to the show cause order, the

---

(…continued)

uncontested divorce and to his being left with the primary burden of caring for the couple's children; assisting his "desperately ill" mother; filing a Chapter 13 and then Chapter 7 bankruptcy action; losing his home through foreclosure; being sued in a malpractice action; having problems with his record keeping, including that related to his IOLTA account, and with responding to subsequent subpoena requests from the Office of Bar Counsel in the District of Columbia in regard to the escrow account issues, which led subsequently to his being charged with misdemeanor contempt.

Court "may immediately impose corresponding discipline or inactive status," may assign the matter to a judge for a hearing, "or may enter any other appropriate order." Md. Rule 16-773(f). At the current juncture in the present case, the parties have responded to the show cause order and the Court is confronted with determining an appropriate order. Subsection (f) provides this Court with a wide-range of options for an appropriate response.

### A. Deference to the Factual Findings or Adjudications of the Originating Jurisdiction.

In "reciprocal" attorney grievance cases, this Court gives deference generally to the factual findings or adjudications of the originating jurisdiction pursuant to Md. Rule 16-773(g), which provides:

> **Conclusive effect of adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

*See also Attorney Grievance Comm'n v. Whitehead*, 390 Md. 663, 668-69, 890 A.2d 751, 754 (2006) (citing *Attorney Grievance Comm'n v. Weiss,* 389 Md. 531, 886 A.2d 606 (2005); *Attorney Grievance Comm'n v. Scroggs,* 387 Md. 238, 249, 874 A.2d 985, 992 (2005); *Attorney Grievance Comm'n v. Ayres-Fountain,* 379 Md. 44, 56, 838 A.2d 1238, 1245 (2003); *Attorney Grievance Comm'n v. Cafferty,* 376 Md. 700, 703, 831 A.2d 1042, 1045-46 (2003)). "In that regard, this Court's cases are clear, pursuant to Rule 16-773(g),

we do not relitigate factual matters or a final adjudication by another appropriate tribunal in a disciplinary [or remedial] proceeding." *Attorney Grievance Comm'n of Maryland v. Haas*, 412 Md. 536, 545-46, 988 A.2d 1033, 1039 (2010) (citing *Attorney Grievance Comm'n v. Sabghir,* 350 Md. 67, 68, 710 A.2d 926, 926 (1998); *Attorney Grievance Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Grievance Comm'n v. Willcher,* 340 Md. 217, 221-222, 665 A.2d 1059, 1061 (1995); *Attorney Grievance Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1988)).

In the present case, although the District of Columbia Court of Appeals has not adjudicated finally the disciplinary charges against Kourtesis, the court reached an interlocutory adjudication that Kourtesis is indefinitely incapacitated, *i.e.*, unfit "to practice law because of mental infirmity or illness," *see* D.C. Bar Rule XI, §13(c).[7] In keeping with the spirit of the comity principles expressed in Md. Rule 16-773(g), we adopt the District of Columbia's judicial determination that Kourtesis was (and remains) incapacitated indefinitely.

### B. Determining the Appropriate Reciprocal Sanction or Remedy.

In determining the appropriate sanction or remedy in reciprocal cases, this Court has "a *duty* to 'assess for itself the propriety of the sanction imposed by the other jurisdiction.'" *Whitehead*, 390 Md. at 672, 890 A.2d at 756 (citing *Attorney Grievance*

---

[7] In this regard, we are confronted with what appears to be our first reciprocal attorney grievance case involving an attorney adjudicated to be incapacitated by an originating jurisdiction. Although this is a case of first impression in that respect, the governing statute, Rule 16-774, envisions that the same principles which govern reciprocal disciplinary actions apply to reciprocal remedy for incapacity actions.

*Comm'n v. Steinberg*, 385 Md. 696, 704 n. 9, 870 A.2d 603, 608 n. 9 (2005); *Attorney Grievance Comm'n v. Ayres-Fountain,* 379 Md. 44, 57, 838 A.2d 1238, 1246 (2003)). "[W]e are prone, but not required, to impose the same sanction the original jurisdiction imposed." *Id.*, 390 Md. at 671, 890 A.2d at 756 (citing *Weiss*, 389 Md. at 546, 886 A.2d at 615). Thus, when considering the appropriate sanction or remedy in a reciprocal attorney grievance case, "'we look not only to the sanction imposed by the other jurisdiction *but to our own cases as well*.'" *Id.*, 390 Md. at 672, 890 A.2d at 756 (emphasis added in *Whitehead*) (quoting *Weiss*, 389 Md. at 548, 886 A.2d at 616) (some internal quotation marks omitted). Although we will reach often the same conclusion as the original jurisdiction and impose an identical sanction or remedy, *see id.*, 390 Md. at 672-73, 890 A.2d at 757 (citing *Willcher,* 340 Md. at 220, 665 A.2d at 1060; *Attorney Grievance Comm'n v. Roberson,* 373 Md. 328, 357, 818 A.2d 1059, 1077 (2003); *Cafferty,* 376 Md. at 728, 831 A.2d at 1059; *Attorney Grievance Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984)), "[w]hen our cases . . . clearly demonstrate that we would apply a different sanction—had the conduct occurred or the case originated here—we need not follow the original jurisdiction's determination." *Id.*, 390 Md. at 673, 890 A.2d at 757. The appropriate sanction "'will depend on the unique facts and circumstances of each case, but with a view toward *consistent dispositions for similar misconduct* [or incapacity].'" *Id.*, 390 Md. at 672, 890 A.2d at 756 (emphasis added in *Whitehead*) (quoting *Weiss*, 389 Md. at 548, 886 A.2d at 616) (some internal quotation marks omitted).

-10-

The rationale underlying our duty to assess the appropriate sanction or remedy for ourselves is that, "[e]ven though attorney discipline is for the primary purpose of protecting the public, [not the punishment of the attorney,] the bar and public policy are served best by determinations consistent with other Maryland sanctions for similar misconduct." *Id.*, 390 Md. at 674, 890 A.2d at 757. We recognize that "'the public interest is served when this Court imposes a sanction [or remedy] which demonstrates to members of the legal profession the type of conduct that will not be tolerated . . . .'" *Id.*, 390 Md. at 674, 890 A.2d at 758 (quoting *Attorney Grievance Comm'n v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004)) (some internal quotation marks omitted). Moreover, in imposing sanctions and remedies consistent with other Maryland determinations, this Court fulfills "'its responsibility to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing [the profession's] image into disrepute.'" *Id.* (quoting *Sperling,* 380 Md. at 191, 844 A.2d at 404) (some internal quotation marks omitted).

As we explained further in *Whitehead*:

[T]he public interest is served when *sanctions designed to effect general and specific deterrence are imposed on an attorney* who violates the disciplinary rules. . . . This goal of effecting general and specific deterrence is best achieved by ensuring that every member of the bar clearly understands the standards of conduct to which he or she is expected to adhere and the consequences of failing to meet those standards. One of our goals, in maintaining these standards is to ensure that *consistent determinations* as to sanctions for similar misconduct are reached in our cases. Whether the case arises in this jurisdiction, or it comes to us as a "reciprocal" discipline case, does not change this Court's duty to apply consistent treatment, i.e., sanctions [and remedies]-as far as is possible.

> Our position on sanctions [and remedies] in "reciprocal" cases has to do with ensuring consistency, which in turn provides the appropriate deterrent for incompetent, unscrupulous or unethical lawyers. Nor do we abandon well reasoned principles of comity in reaching our decision. As required by Rule 16-773(g), the heaviest weight is given to our sister jurisdictions' factual findings. From them we rarely stray. We deviate from their sanctions, however, when the history of our cases warrants a substantially different disposition . . . .

*Id.*, 390 Md. at 674-75, 890 A.2d at 758 (emphasis added in *Whitehead*) (internal citations and quotation marks omitted). With the foregoing in mind, we turn now to determine what sanction or remedy is imposed typically in Maryland for an attorney pleading incapacity due to mental illness and seeking an abeyance or stay of the adjudication of pending disciplinary charges.

Because Maryland does not have a special procedure directly analogous to that provided in D.C. Bar Rule XI, §13, we approach our analysis by providing first an overview of the three paths by which this Court may find an attorney incapacitated. One path is provided for in reciprocal attorney grievance cases (such as this one). Pursuant to Maryland Rule 16-773, this Court may find that an attorney is incapacitated and order that, *inter alia*, corresponding "inactive status" be imposed as a reciprocal action.

A second path to finding an attorney incapacitated in this State is provided by Rule 16-774, which states that "if the attorney has been judicially determined to be mentally incompetent . . . ," then "[a]n attorney may be [ ] placed on inactive status for an indefinite period . . . ." Md. Rule 16-774(a). Under this rule, Bar Counsel files a petition to place summarily the attorney on inactive status, pursuant to the procedures set forth in subsection (b). Upon review of the petition and any answer, "the Court of Appeals may

immediately place the attorney on inactive status for an indefinite period pending further order of the Court," order a designated judge to hold a hearing, or "enter any other appropriate order." Md. Rule 16-774(c). At this time, if disciplinary or remedial proceedings are pending for alleged misconduct, the Court of Appeals's order under subsection (c) stays those proceedings. Md. Rule 16-774(d). When the attorney who has been placed on inactive status under section (c) is determined later to be competent, "the Court of Appeals shall terminate the inactive status and either dismiss the [disciplinary] petition" or order a designated judge to hold a hearing on them. Md. Rule 16-774(e)

Lastly, Md. Rule 16-772(b) recognizes a third path by which an attorney may consent to placement on inactive status. For example, in *Attorney Grievance Comm'n v. Demyan*, 299 Md. 652, 474 A.2d 1342 (1984), this Court considered a petition of a respondent that the Court place him on inactive status from the practice of law due to extreme memory loss.[8] In *Demyan*, it appears that a petition for disciplinary action was pending. The Court ordered that the respondent be placed on inactive status "until such time as he can demonstrate by proper evidence that he has sufficiently recovered his health, both mental and physical, to be reinstated as an active practitioner of the law in this State." *Id.*, 299 Md. at 654, 474 A.2d at 1343.

---

[8] In this earlier case, the Court considered the petition under Md. Rule of Proc. BV13, which is the predecessor to the current Md. Rule 16-772(c).

Similarly, in *Attorney Grievance Comm'n v. Draper*, 307 Md. 435, 514 A.2d 1212 (1986),[9] we, agreeing with the hearing judge's conclusion that the attorney was incompetent, were confronted with "decid[ing] how to dispose of this matter in order to protect the public." *Id.*, 307 Md. at 440, 514 A.2d at 1215. The Court began by repeating the well-established principle that "[t]he purpose of a disciplinary proceeding is to protect the public, rather than to punish the errant attorney." *Id.*, 307 Md. at 441, 514 A.2d at 1215 (citing *Attorney Grievance Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981)). The Court concluded: "When an attorney is incapacitated to the extent she is unable to engage in the practice of law, it is appropriate to place her on inactive status." *Id.* (citing *Attorney Grievance Comm'n v. Demyan*, 299 Md. 652, 474 A.2d 1342 (1984); *Attorney Grievance Comm'n v. Harrison*, 292 Md. 81, 437 A.2d 228 (1981)). The Court reasoned that inactive status is the most appropriate sanction because that "action will remove [the incompetent attorney] from the practice of law until such time as she can demonstrate her fitness to return to her profession." *Id. See also Hohenberger v. Attorney Grievance Comm'n*, 292 Md. 83, 83, 437 A.2d 229, 229-30 (1981) (granting attorney's petition and ordering that he "be placed on inactive status until such time as he can demonstrate by proper evidence that he has sufficiently recovered his health, both mental and physical, to be reinstated as an active practitioner of the law in this State").

Assuming that an attorney is incapacitated, we determine which "remedy" is appropriate. In this regard, a significant difference exists between our regulatory scheme

_____

[9] Again, in this case, the Court considered the petition for inactive status under Md. Rule of Proc. BV13.

and the procedures in the District of Columbia. The Maryland Rules differentiate between "remedies" appropriate for "incapacity" and "sanctions or remedies" appropriate for "professional misconduct" as follows:

> **(a) Professional Misconduct.** One or more of the following sanctions or remedies may be imposed upon an attorney for professional misconduct:
>     (1) disbarment by the Court of Appeals;
>     (2) suspension by the Court of Appeals;
>     (3) reprimand by the Court of Appeals or, with the attorney's consent, by the Commission;
>     (4) conditional diversion in accordance with a Conditional Diversion Agreement entered into pursuant to Rule 16-736; and
>     (5) termination of a disciplinary or remedial proceeding accompanied by a warning pursuant to Rule 16-735 (b).
>
> **(b) Incapacity.** One of the following remedies may be imposed upon an attorney for incapacity:
>     (1) placement on inactive status, subject to further order of the Court, or
>     (2) conditional diversion in accordance with a Conditional Diversion Agreement entered pursuant to Rule 16-736.
>
> **(c) Conditions.** An order, decision, or agreement that imposes a disciplinary sanction upon an attorney or places an attorney on inactive status may include one or more specified conditions, as authorized by Rules 16-736, 16-760, and 16-781.

Md. Rule 16-721.

Thus, the Maryland Rules reserve the sanction of indefinite suspension for attorney misconduct. Accordingly, we impose "indefinite suspension" upon an incapacitated attorney typically only when the attorney is adjudicated also of misconduct warranting such a sanction.[10] In the present case, because there has been no final

---

[10] In certain cases, an attorney's incapacity may serve also as a mitigating factor in determining the appropriate sanction for misconduct. *See, e.g.*, *Attorney Grievance Comm'n v. Duvall*, 373 Md. 482, 493-94, 819 A.2d 343, 349-350 (2003) (explaining why

(continued…)

-15-

adjudication finding misconduct by Kourtesis in the District of Columbia, an "indefinite suspension" sanction in Maryland is not appropriate. Rather, Md. Rule 16-721(b) limits this Court to imposing one of two "remedies"—inactive status or conditional diversion—upon an incapacitated attorney, such as Kourtesis. Because conditional diversion is inapplicable in this case,[11] placement on inactive status is the sole possible remedy in circumstances such as the present case where attorney misconduct has not been found at present.

We acknowledge the imposition of "inactive status" upon Kourtesis differs from the District of Columbia's imposition of "indefinite suspension"; however, we point out that the difference is largely in name alone. The District of Columbia has no remedy equivalent to our "inactive status," but rather deploys "indefinite suspension" as both a sanction and a remedy. Because Maryland differentiates between sanctions and remedies, we conclude that this State's "indefinite suspension" sanction, and its concomitant condemning connotation, is inappropriate here; instead, placement on

---

(…continued)

indefinite suspension is more appropriate than disbarment for a respondent who has admitted her misconduct and has a "severe mental illness"); *see generally Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001) (discussing the development of this Court's approach to considering an attorney's physical or mental conditions in determining an appropriate sanction for misconduct).

[11] Rule 16-732 governs conditional diversion agreements. Subsection (a), which sets limits for when a "conditional diversion agreement" is appropriate, excludes cases involving professional incapacity that could be the basis for an immediate Petition for Disciplinary or Remedial Action pursuant to Rules 16-771, 16-773, or 16-774. Md. Rule 16-736(a)(2).

inactive status is commensurate with our treatment of past cases involving incompetency where no final adjudication on the merits of the underlying misconduct charges has taken place as yet.[12]

Before imposing the most analogous remedy (inactive status) on Kourtesis, however, we must determine whether *any* reciprocal remedy is appropriate in this case. Kourtesis urges this Court to send the matter to a judge of the Circuit Court for Montgomery County for a hearing on his fitness to practice law in Maryland because reciprocal discipline should not be ordered in this case due to exceptional circumstances under Md. Rule 16-773(e)(3) and (5). After consideration of these arguments, we conclude that neither exception applies in this case.

First, Kourtesis alleges that the reason for his indefinite suspension in the District of Columbia no longer exists and, thus, pursuant to Rule 16-773(e)(5), no reciprocal action is appropriate. This argument misunderstands the nature of Kourtesis's indefinite suspension in the District of Columbia and its significance to us. The D.C. Court of Appeals imposed indefinite suspension upon Kourtesis in response to his motion, pursuant to D.C. Bar Rule XI, § 13, seeking indefinite suspension *and the abeyance of the disciplinary matters* due to his self-professed incapacity. The abeyance of the disciplinary matters is interconnected with the indefinite suspension. In order for

---

[12] An attorney placed on "inactive status" in this State is permitted typically to seek reinstatement by proving at a hearing that he or she is no longer incompetent and is now fit to practice law. In this case, however, as discussed further in this opinion, we find that the possibility of such a hearing occurring in Maryland to be improper as long as pending disciplinary matters are held in abeyance indefinitely in the District of Columbia. Incompetency or disability, at least in this case, does not stop at a jurisdictional boundary.

Kourtesis to be reinstated in the District of Columbia, he must be willing to have the abeyance of the disciplinary matters lifted. In light of the dual purpose of Kourtesis's "indefinite suspension" in the District of Columbia, we conclude that, even if he has regained competency such that he may be deemed "fit to practice law" at this point, the other reason for his "indefinite suspension"—the stayed disciplinary proceedings in the District of Columbia—continues to exist until dismissed or adjudicated on the merits.

To conclude otherwise would convert Maryland into an asylum for attorneys wishing to flee from pending disciplinary matters in other jurisdictions. Allowing an attorney, who petitioned in a sister jurisdiction for disciplinary proceedings to be held in abeyance due to self-professed incompetency, to seek safe haven in our State by demonstrating regained competency and permitting him or her to continue to practice here, while continuing to avoid the disciplinary proceedings stayed indefinitely in the other jurisdiction, is contradictory to our duty to uphold the integrity of the legal profession, as well as to the purposes of reciprocal attorney grievance cases. *See Rheb v. Bar Ass'n of Baltimore City*, 186 Md. 200, 205, 46 A.2d 289, 291 (1946) ("'The question is whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion.'") (citation omitted); Alan M. Colvin, *Reciprocal Discipline: Double Jeopardy or A State's Right to Protect Its Citizens?*, 25 J. Legal Prof. 143, 143 (2001) ("Reciprocal discipline prevents attorneys from violating ethical rules, getting suspended from the practice of law, and then transferring to a new jurisdiction to continue to practice with an unblemished record of ethical conduct."). "An attorney is not cured or rehabilitated by transferring jurisdictions

. . . ." *Reciprocal Discipline*, 25 J. Legal Prof. at 149. Thus, we conclude that the reasons for Kourtesis's indefinite suspension continue to exist and the "exceptional circumstances" exception of Md. Rule 16-773(e)(5) should not apply here.

We dismiss additionally Kourtesis's claimed "exceptional circumstances" of "grave injustice." *See* Md. Rule 16-773(e)(3). At oral argument before us, Kourtesis's counsel stated that the process for obtaining a final adjudication in the District of Columbia would take many years and that reinstatement would be quicker if a competency hearing was held instead in Maryland. According to Kourtesis, a "grave injustice" under Rule 16-773(e)(3) would occur if this Court imposed a sanction or remedy that precluded him from practicing law in this State until the proceedings in the District of Columbia were resolved finally. This conclusion ensues, he asserts, because of the financial difficulties he would endure. Although we acknowledge that imposing sanctions or remedies may cause great financial difficulties for respondents, such difficulties are not the type of "grave injustice" envisioned by our rules, but rather an unfortunate (but necessary) consequence of measures designed to protect the public. Moreover, it seems to us far-fetched to call this a "grave injustice" when Kourtesis requested the disposition he received in the District of Columbia slightly over a year ago and, apparently, seeks a hearing in this State in an effort to "forum-shop" to prove he has regained his competency, while keeping in place the abeyance of the disciplinary

proceedings in the District of Columbia.[13] Regardless of Kourtesis's reason(s) for seeking a separate competency hearing, we conclude that the exceptional circumstance of "grave injustice" under Rule 16-773(e)(3) does not apply in this case.

In conclusion, we hold that the appropriate reciprocal remedy in Maryland for Kourtesis is, at present, inactive status until further order by this Court.[14]

> **IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST NIKOLAOS PANAGIOTIS KOURTESIS.**

---

[13] Some situations may present "grave injustice" in requiring the attorney to prove that he or she has regained competency in the original jurisdiction. Kourtesis did not make any such convincing arguments in this case. Thus, we reserve consideration of that possibility for another day.

[14] Placement on inactive status in Maryland terminates the attorney's privilege to practice law in this State until otherwise ordered by this Court. *See* Rule 16-772(c)(2)(E).